IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE, TENNESSEE

| | |
|---|---|
| SONY/ATV MUSIC PUBLISHING LLC, a Delaware Limited Liability Company, SONY/ATV TUNES LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV HARMONY", SONY/ATV SONGS LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV MELODY," SONY/ATV SOUNDS LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV RHYTHM," SONY/ATV DISCOS MUSIC PUBLISHING LLC, a Delaware Limited Liability Company and SONY/ATV LATIN MUSIC PUBLISHING LLC, a Delaware Limited Liability Company, EMI BLACKWOOD MUSIC INC., a Connecticut Corporation; EMI APRIL MUSIC INC., a Connecticut Corporation; COLGEMS-EMI MUSIC INC., a Delaware Corporation; EMI GOLD HORIZON MUSIC CORP., a New York Corporation; EMI U CATALOG INC., a New York Corporation; EMI UNART CATALOG INC., a New York Corporation; JOBETE MUSIC CO. INC., a Michigan Corporation; and STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation, | Case No.<br><br>Judge<br><br>Magistrate Judge<br><br>**JURY DEMAND** |
| Plaintiffs, | |
| vs.- | |
| 172902 ONTARIO, INC., a Canadian corporation, d/b/a "TRICERASOFT.COM," d/b/a "SELECTKARAOKE.COM," d/b/a "KARAOKEDOWNLOADS.CA" and GAI MARCOS, individually, | |
| Defendants. | |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I. Introduction

Pursuant to Federal Rule of Civil Procedure 65, Rule LR 65.01 of the Local Civil Rules, and 17 U.S.C §§ 502, Plaintiffs have moved for a temporary restraining order and preliminary injunction, asking the Court to enjoin and restrain Defendants, 172902 ONTARIO, INC., a Canadian corporation, d/b/a "TRICERASOFT.COM," d/b/a "SELECTKARAOKE.COM," d/b/a "KARAOKEDOWNLOADS.CA" and GAI MARCOS, individually, (collectively, "Defendants" or the "TRICERASOFT Defendants"), from manufacturing, distributing, or otherwise exploiting musical compositions owned and/or administered by Plaintiffs. As set forth in greater detail below, Defendants are manufacturing, selling, and/or distributing unauthorized karaoke products based on Plaintiffs' copyrighted musical compositions. Plaintiffs meet each of the criteria to obtain entry of a temporary restraining order and preliminary injunction.

## II. Factual Background

The Plaintiffs are two groups of companies that own or control the rights to thousands of popular musical compositions. The first group consists of affiliated companies popularly known as "Sony" or "Sony/ATV."[1] The second group consists of affiliated companies popularly known

---

[1] The "Sony/ATV" Plaintiffs include: SONY/ATV MUSIC PUBLISHING LLC, a Delaware Limited Liability Company; SONY/ATV TUNES LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV HARMONY"; SONY/ATV SONGS LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV MELODY"; SONY/ATV SOUNDS LLC, a Delaware Limited Liability Company d/b/a "SONY/ATV RHYTHM"; SONY/ATV DISCOS MUSIC PUBLISHING LLC, a Delaware Limited Liability Company; and SONY/ATV LATIN MUSIC PUBLISHING LLC, a Delaware Limited Liability Company. (Verified Compl. ¶¶ 3-8.)

2

as "EMI."[2] The Sony/ATV Plaintiffs are the owners, co-owners, exclusive licensees, and/or exclusive administrators of the copyrights in the compositions listed on the schedules attached to the Verified Complaint as Exhibits 1-8. (Verified Compl. ¶¶ 27-28, Exhibits 1-8.) The EMI Plaintiffs are the owners, co-owners, exclusive licensees, and/or exclusive administrators of the copyrights in the musical compositions listed on the schedules attached to the Verified Complaint as Exhibits 9-16. (Verified Compl. ¶¶ 27-28, Exhibits 9-16.) For the purposes of Plaintiffs' claims, the musical compositions identified in Exhibits 1-16 of the Verified Complaint shall be referred to as the "Subject Works." All of the Subject Works are original musical compositions. (Verified Compl. ¶ 28.)

Plaintiffs are in the business of developing and exploiting original music in conjunction with songwriters, as well as building their catalogues of music copyrights through acquisition of other catalogues. (*Id.* ¶ 21.) As legal owners of the exclusive rights, Plaintiffs control the copyrights, in whole or in part according to the percentage indicated on Exhibits 1 through 16 of the Verified Complaint. (*Id.* ¶¶ 21, 27-28, Exhibits 1-16.) As the owners/administrators of their catalogues of music copyrights, Plaintiffs license the rights to record, reproduce, distribute, advertise, and otherwise exploit such copyrighted musical works in exchange for the payment of royalties or other fees customarily associated with the issuance of such licenses. (*Id.* ¶ 21.)

The TRICERASOFT Defendants are in the business of selling and distributing karaoke recordings. (*Id.* ¶¶ 24-25, 29.) Karaoke, which means "empty orchestra" in Japanese, is a multi-

---

[2] The "EMI" Plaintiffs include: EMI BLACKWOOD MUSIC INC., a Connecticut Corporation; EMI APRIL MUSIC INC., a Connecticut Corporation; COLGEMS-EMI MUSIC INC., a Delaware Corporation; EMI GOLD HORIZON MUSIC CORP., a New York Corporation; EMI U CATALOG INC., a New York Corporation; EMI UNART CATALOG INC., a New York Corporation; JOBETE MUSIC CO. INC., a Michigan Corporation; and STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation. (Verified Compl. ¶¶ 9-16.)

3

million dollar business. (*Id.* ¶ 19.) In the United States, retailers of karaoke derive most of their revenues from sales of re-recordings of music that is already popular. (*Id.*)

A fundamental legal requirement for recording copyrighted material to produce a karaoke record is a license for exploitation of the song. (*Id.* ¶ 21.) Importantly, karaoke includes the addition of graphics or video to the musical composition, i.e., the words to the song are displayed on a monitor as the song plays and/or a video may play in the background. (*Id.* ¶ 22.) Thus, karaoke recordings are "audio/visual works" and constitute "derivative works" based on the musical compositions, as the Copyright Act defines those terms. (*See id.*) Accordingly, the Copyright Act's compulsory licensing provisions, which apply only to "sound recordings," do not apply to the karaoke recordings. *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F. 3d 60, 62-63 (2d Cir. 1996). Rather, Karaoke recordings require "synchronization" licenses for the graphic display of lyrics that appear on a monitor in a synchronized presentation with the recorded music. *ABKCO*, 96 F.3d at 62-63 (stating that "the producers and distributors of karaoke versions of songs must acquire synchronization or 'synch' licenses from the copyright owners of the songs to legally manufacture karaoke discs"). That license must be obtained from the songwriter or his agent, generally a "music publisher," "publisher," or "administrator," such as the Plaintiffs. (Verified Compl. ¶ 21.)

Plaintiffs have never authorized the TRICERASOFT Defendants to exploit the Subject Works as complained of in the Verified Complaint. (Verified Compl. ¶ 21.) While the TRICERASOFT Defendants claim on their websites that their recordings are "fully licensed," such representations are not true because, at a minimum, Plaintiffs have not licensed the TRICERASOFT Defendants' exploitation of the Subject Works in the United States. Whether

4

the TRICERASOFT Defendants have obtained licensing in any other countries is under investigation, but such permissions (if any) would not include the territory of the United States.

The TRICERASOFT Defendants use interactive Internet websites to advertise, distribute, and sell karaoke recordings, as well as software for playing such recordings. (*Id.* ¶¶ 24-25.) The TRICERASOFT Defendants have advertised, distributed, and sold numerous unlicensed illegal karaoke recordings of the Subject Works to individuals within the Middle District of Tennessee. (*Id.* ¶¶ 24, 30.) The TRICERASOFT Defendants also have shipped infringing products to individuals within the Middle District of Tennessee. (*Id.* ¶ 24.) The unlicensed recordings that the TRICERASOFT Defendants have advertised, distributed, and sold have predominately been in the form of "MP3+G Downloads" and/or "Custom Discs." (*Id.*) The www.tricerasoft.com website touts "over 90,000 MP3+G songs." (*Id.*) Regarding custom discs, customers use Defendants' website to specify which songs they want on a disc, and Defendants then create the disc based on the website order and ship the infringing copies to the customers. (*Id.* ¶ 30.) Defendants have shipped such discs into this judicial district. (*Id.* ¶ 24.)

In addition, the TRICERASOFT Defendants offer unauthorized recordings as Internet downloads and via an Internet streaming service. (*Id.* ¶ 30.) To facilitate such downloading or streaming, the TRICERASOFT Defendants house unauthorized copies of the Subject Works on their servers. (*Id.*) Customers place orders for specific songs via Defendants' internet website, and Defendants either send a download to the customers' computers or other devices or else stream performances of the recordings from Defendants' computers/servers to the customers' computers or other devices. (*Id.*) Defendants have sent downloads and/or streams into this judicial district. (*Id.*) While the creator of these unauthorized recordings has yet to be disclosed,

the gravamen of TRICERASOFT Defendants' conduct lies in their own unlawful duplication, copying, and distribution of such unauthorized recordings. (*Id.* ¶ 31.)

### III. Argument

Whether to issue an injunction lies within the discretion of the district court. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999). That discretion will not be overturned unless the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Mascio v. Pub. Employees Retirement Sys. of Ohio*, 160 F.3d 310 (6th Cir. 1998).

The underlying purpose of an injunction is to preserve the status quo and prevent irreparable harm. *See, e.g., Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974); *The Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (stating that the purpose of a Rule 65 injunction is "to preserve the status quo so that a reasoned resolution of a dispute may be had").

Injunctive relief is appropriate when a plaintiff demonstrates:

(1)  a substantial likelihood of success on the merits;

(2)  a likelihood that Plaintiff will suffer irreparable injury;

(3)  that the harm threatened to plaintiff outweighs whatever harm the proposed injunction may cause to defendant;  and

(4)  that the injunction serves the public interest.

*Donaldson v. United States*, 109 F. App'x 37, 41 (6th Cir. 2004).

6

Case 3:14-cv-01929   Document 3   Filed 10/01/14   Page 6 of 14 PageID #: 492

These four factors are elements to be balanced and not prerequisites that must be met. *Tree Publ'g Co., Inc. v. Warner Bros. Records*, 785 F. Supp. 1272, 1274 (M.D. Tenn. 1991) (citing *In re Delorean Motor Co. v. Delorean*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

Moreover, "in most copyright infringement cases, 'the plaintiffs' burden for obtaining a preliminary injunction . . . collapses into the showing of a substantial likelihood of success on the merits, and that issue becomes determinative." *Schenck v. Orosz*, No. 3:13-CV-0294, 2013 WL 5963557, at *6 (M.D. Tenn. Nov. 7, 2013) (quoting *Tree Publ'g Co.*, 785 F.Supp. at 1276). This fact is true because (1) after plaintiffs establish a likelihood of success on their infringement claim, they are entitled to a rebuttable presumption of irreparable harm; (2) courts generally ignore the harm to infringers so that an infringer cannot set up his infringement to avoid an injunction; and (3) "the public interest can only be served by upholding copyright protections." *See, e.g., Tree Publ'g Co.*, 785 F.Supp. at 1276-77.

In this case, Plaintiffs' likelihood for success is a foregone conclusion because the TRICERASOFT Defendants have unlawfully distributed products that infringe Plaintiffs' federally registered copyrights. Moreover, the other factors also weigh in Plaintiffs' favor. Plaintiffs therefore request a preliminary injunction enjoining the TRICERASOFT Defendants from manufacturing, distributing, releasing, or otherwise exploiting any karaoke recordings based on a musical composition owned and/or administered by Plaintiffs.

### A.     Plaintiffs' Success On The Merits Is a Foregone Conclusion.

At this stage of the litigation, Plaintiffs need only present a prima facie case showing their entitlement to the relief sought. *See White Consol. Indus., Inc. v. Whirlpool Corp.*, 781 F.2d 1224, 1225 (6th Cir. 1986) (district court issued preliminary injunction because "defendants had

7

Case 3:14-cv-01929   Document 3   Filed 10/01/14   Page 7 of 14 PageID #: 493

failed to overcome the plaintiffs' prima facie case"). Further, a court shall not be precluded from issuing a preliminary injunction "if the movant has, at a minimum, show[n] serious questions going to the merits." *Six Clinics Holding Corp., II v. CAFCOMP Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (citing *Gaston Drugs, Inc. v. Metro. Life Ins. Co.*, 823 F.2d 984, 988 n.2 (6th Cir. 1987)); *see also Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011) ("[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.") (citing *Six Clinics Holding Corp., II,* 119 F.3d at 402).

Plaintiffs meet this test. A plaintiff in a copyright infringement action must establish two elements: (1) ownership of a valid copyright and (2) infringement, i.e. copying of constituent elements of the work that are original. *Fogerty v. MGM Grp. Holdings Corp., Inc.*, 379 F.3d 348, 352 (6th Cir. 2004). In copyright infringement actions, "the certificate of registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The Verified Complaint, including Exhibits 1-16, which reference copyright registration numbers for all Subject Works, establish ownership. Plaintiffs therefore have met the prima facie element of ownership.

Plaintiffs have also met the prima facie element of infringement. The owner of a musical composition copyright holds the exclusive right to control the manufacture and distribution of performances of the copyrighted material; the reproduction and distribution of the lyrics; and the creation of derivative works based on the compositions. 17 U.S.C. § 106. Plaintiffs have not licensed the TRICERASOFT Defendants to create, manufacture, sale, or distribute karaoke products. (Verified Compl. ¶ 21.) But the TRICERASOFT Defendants have copied and

8

Case 3:14-cv-01929    Document 3    Filed 10/01/14    Page 8 of 14 PageID #: 494

distributed (if not created) unauthorized copies of the Subject Works in the form of karaoke recordings. (*Id.* ¶¶ 24-25, 29-30.) They have done so via Internet download, Internet streaming, and the distribution of CDs, including to consumers in Tennessee. (*Id.* ¶¶ 24, 30.) Plaintiffs' likelihood of success on the merits of their copyright infringement claim is a foregone conclusion.

### B. Plaintiffs Will Suffer Irreparable Injury.

In a copyright infringement action, plaintiffs establish a rebuttable presumption of irreparable harm by demonstrating a likelihood of success on the merits. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532-33 (6th Cir. 2004); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259 (6th Cir. 1988); *Schenck v. Orosz*, No. 3:13-CV-0294, 2013 WL 5963557, at *6 (M.D. Tenn. Nov. 7, 2013) ("When plaintiffs show a reasonable likelihood of success on their copyright infringement claims, the plaintiffs are entitled to a rebuttable presumption of irreparable harm.").

Plaintiffs' likelihood of success is a foregone conclusion because no question exists that the TRICERASOFT Defendants distributed infringing works owned by Plaintiffs. (*See supra* Section III.A.) By infringing Plaintiffs' rights through the sale of infringing karaoke packages, the TRICERASOFT Defendants are presumed to cause Plaintiffs irreparable injury.

Even without this presumption, the TRICERASOFT Defendants infringing conduct would cause Plaintiffs irreparable harm. "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."*Anderson v. TOL, Inc.*, 927 F. Supp. 2d 475, 487-88 (M.D. Tenn. 2013) (citing *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)). The TRICERASOFT Defendants'

conduct is causing all of these types of harm. The TRICERASOFT Defendants have deprived Plaintiffs of their statutory right to negotiate the karaoke use of their compositions on acceptable terms. *ABKCO*, 96 F. 3d 60, 62-63 (stating that "a copyright owner may negotiate, if so disposed, the karaoke use of a song and the terms of the authorizing such license"). They can offer their infringing products at a lower price because they do not pay licensing fees. Legitimate karaoke enterprises that purchase licenses from Plaintiffs are at a competitive disadvantage compared to merchants such as the TRICERASOFT Defendants who disregard the law. This fact erodes Plaintiffs' opportunity to exploit their own rights with approved dealers.

Also, because the TRICERSAOFT Defendants have not obtained licenses or been authorized to sell officially-licensed products, Plaintiffs have no control over the quality of the unauthorized copies the TRICERASOFT Defendants re-produce, distribute, and sell, which may erode goodwill of the protected works or of the karaoke market generally. Importantly, Plaintiffs, at the request of the artists, do not allow some music to be used for karaoke at all, and the TRICERASOFT Defendants have usurped the ability of Plaintiffs and the artists to control their original works of authorship.

Moreover, the fact that the Copyright Act allows a maximum award of statutory damages of $150,000.00 is inadequate reparation because the value of many of the Subject Works runs to the millions of dollars. (Verified Compl. ¶ 33.) The sheer volume of infringing compositions listed on Exhibits 1 through 16 to Plaintiffs' Verified Complaint also supports a finding of irreparable harm if TRICERASOFT Defendants' infringing conduct is not enjoined. (*Id.* ¶ 26, Exhibits 1-16); see *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) ("The irreparable injury flows 'both from the potential difficulty of proof of plaintiff's damages,

conduct is causing all of these types of harm. The TRICERASOFT Defendants have deprived Plaintiffs of their statutory right to negotiate the karaoke use of their compositions on acceptable terms. *ABKCO*, 96 F. 3d 60, 62-63 (stating that "a copyright owner may negotiate, if so disposed, the karaoke use of a song and the terms of the authorizing such license"). They can offer their infringing products at a lower price because they do not pay licensing fees. Legitimate karaoke enterprises that purchase licenses from Plaintiffs are at a competitive disadvantage compared to merchants such as the TRICERASOFT Defendants who disregard the law. This fact erodes Plaintiffs' opportunity to exploit their own rights with approved dealers.

Also, because the TRICERSAOFT Defendants have not obtained licenses or been authorized to sell officially-licensed products, Plaintiffs have no control over the quality of the unauthorized copies the TRICERASOFT Defendants re-produce, distribute, and sell, which may erode goodwill of the protected works or of the karaoke market generally. Importantly, Plaintiffs, at the request of the artists, do not allow some music to be used for karaoke at all, and the TRICERASOFT Defendants have usurped the ability of Plaintiffs and the artists to control their original works of authorship.

Moreover, the fact that the Copyright Act allows a maximum award of statutory damages of $150,000.00 is inadequate reparation because the value of many of the Subject Works runs to the millions of dollars. (Verified Compl. ¶ 33.) The sheer volume of infringing compositions listed on Exhibits 1 through 16 to Plaintiffs' Verified Complaint also supports a finding of irreparable harm if TRICERASOFT Defendants' infringing conduct is not enjoined. (*Id.* ¶ 26, Exhibits 1-16); see *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) ("The irreparable injury flows 'both from the potential difficulty of proof of plaintiff's damages,

and also from the impairment of intangible values . . . .'") (quoting *Koppers Co., Inc. v. Krupp-Koppers GmbH*, 517 F. Supp. 836, 849 (W.D. Pa. 1981) (alterations in original). The significant breadth of intangible rights infringed is staggering. These harms are irreparable.

### C. The Threatened Injury to Plaintiffs Outweighs Any Injury to Defendants.

In copyright cases, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." *Tree Publ'g Co.*, 785 F. Supp. at 1277 (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3rd Cir. 1983)); *see also Schenck*, 2013 WL 5963557, at *6.

The TRICERASOFT Defendants have no right to reproduce and distribute karaoke recordings based on compositions Plaintiffs own or control. (Verified Compl. ¶¶ 21.) Thus, the TRICERASOFT Defendants can suffer no harm from being enjoined from exploiting Plaintiffs' intellectual property.

The TRICERASOFT Defendants may argue that an injunction barring the release of future infringing karaoke packages is unnecessary because they have an ongoing obligation under the law not to commit copyright infringement. An injunction is appropriate, however, to bar future violations of law when the injunction provides the restrained party with fair notice of what conduct will risk contempt, *Louis W. Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 771 (3rd Cir. 1994), and when the restrained party presents a likelihood of future violations, *id.*; *United States v. Franchi*, 756 F. Supp. 889, 893 (W.D. Pa. 1991) ("[O]nce a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of

11

future violations in order to obtain relief."). The sheer scope of the TRICERASOFT Defendants' conduct strongly suggests the reasonable likelihood of future violations.

### D. The Public Interest Is Served By Enjoining Defendants' Infringement.

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections." *Tree Publ'g Co.*, 785 F. Supp. at 1276-77 (quoting *Apple*, 714 F.2d at 1254); *Schenck*, 2013 WL 5963557 at * 6. Because a primary purpose of copyright law is to protect the rights of owners of intellectual property, the issuance of the injunction will benefit the public by vindicating the rights of the rightful owners of the intellectual property at issue. *See id.*

An injunction will also aid in protecting the legitimacy of the market for karaoke products. Karaoke manufacturers and distributors that seek the appropriate licenses to exploit intellectual property cannot fairly compete with unscrupulous manufacturers and distributors that fail or refuse to pay appropriate licensing fees.

### IV. Conclusion

Plaintiffs request that the Court enjoin the TRICERASOFT Defendants from manufacturing, distributing, releasing, or otherwise exploiting any recordings based on compositions owned or administered by Plaintiffs, including the Subject Works. Plaintiffs have clearly shown a substantial likelihood of success on the merits, a likelihood of irreparable injury, a balance of the equities in their favor, and that the public is better served by prohibiting willful infringement of recognized rights.

Accordingly, Plaintiffs respectfully request that the Court grant their application for a temporary restraining order, and set an early date for a hearing on Plaintiffs' Motion for Preliminary Injunction.

Respectfully Submitted,

_[signature]_

Timothy L. Warnock (BPR #12844)
Timothy Harvey (BPR# 21509)
Riley, Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Ph.: 615-320-3700

and


Paul Harrison Stacey
(*Pro Hac Vice pending*)
Law Offices of Paul Harrison Stacey, P.C.
Wyoming Bar No. 5-2615
7225 N. Spring Gulch Road
P.O. Box 4157
Jackson, WY 83001
Ph:  307-733-7333
Fax: 307-733-7360

***Attorney for Plaintiffs,***
***SONY/ATV MUSIC PUBLISHING LLC, et al.***

## CERTIFICATE OF SERVICE

I certify that true and correct copy of the foregoing has been served upon Defendant 172902 Ontario, Inc., 194 Sugarhill Dr., Brampton, L7A 3X4 Ontario, Canada and Defendant Gai Marcos, 6 Ruth Avenue, Brampton, L6Z 3X4 Ontario, Canada, in conformity with Article 5 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at the Hague, the 15th of November 1965, having been transferred to the receiving authority, Ministry of the Attorney General, Ontario Court of Justice, 393 Main Street, Haileybury, Ontario P0J 1K0, Canada, this 1st day of October, 2014.

_____