IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SONY/ATV MUSIC PUBLISHING LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil No. 3:14-cv-1929 Judge Sharp |
| 1729172 ONTARIO, INC., *et al.*, | ) ) | Magistrate Judge Griffin |
| Defendants. | ) | |

## ORDER GRANTING PRELIMINARY INJUNCTION

Pending before the Court is Plaintiffs Sony/ATV Music Publishing LLC, et al.'s ("Plaintiffs") Application for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support, which seeks preliminary injunctive relief against Defendants, 1729172 Ontario, Inc. ("Tricerasoft") and Gai Marcos ("Marcos") (collectively "Defendants"). (Docket Nos. 2-3). The Court has considered the voluminous documents filed in support and opposition of the Application, the arguments of the parties' respective counsel, and the evidence now on the record. For the reasons set forth below and pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C § 502, the Application for a preliminary injunction is hereby granted.

A. The Standard for a Preliminary Injunction

Under Federal Rule of Civil Procedure 65, the Court may issue a preliminary injunction under appropriate circumstances. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." Obama for Am. v. Husted, 697 F.3d 423, 428 (6th Cir.

1

2012) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." Draudt v. Wooster City School Dist. Bd. of Educ., 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003).

The preliminary injunction analysis in the copyright context centers on the first prong: When a plaintiff shows a reasonable likelihood of success on her copyright infringement claims, she is entitled to a rebuttable presumption of irreparable harm. Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259, 267 (6th Cir. 1988). Also, in copyright infringement cases, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." Tree Publ'g Co., Inc. v. Warner Bros. Records, a Div. of Time–Warner, Inc., 785 F. Supp. 1272, 1276 (M.D. Tenn. 1991) (citing Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983)). Finally, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections." Tree Publ'g, 785 F. Supp. at 1276–77 (citing Apple Computer, 714 F.2d at 1255). Therefore, in most copyright infringement cases, "the plaintiffs' burden for obtaining a preliminary injunction . . . collapses into the showing of a substantial likelihood of success on the merits, and that issue becomes determinative." Tree Publ'g Co., 785 F. Supp. at 1276.

### 1. Plaintiffs have demonstrated a likelihood of success on the merits.

To ultimately prove their claim, Plaintiffs must establish two elements: (1) ownership of a valid copyright and (2) infringement, i.e. copying of constituent elements of the work that are original. Fogerty v. MGM Grp. Holdings Corp., Inc., 379 F.3d 348, 352 (6th Cir. 2004). The facts now before the Court indicate that Plaintiffs will likely succeed on both elements.

2

### a. Ownership

Plaintiffs provided sufficient sworn proof that they own or control the rights to thousands of popular musical compositions, in whole in part, as identified in Exhibits 1 through 16 attached hereto (the "Subject Works"). Plaintiffs have also produced a number of split sheets and certificates of registration that further establish their ownership interests in the Subject Works.[1]

Defendants have challenged Plaintiffs' claims to ownership based on Defendants' review of records from the United States Copyright Office. (See, e.g., Docket No. 117, p. 2; Docket No. 115, ¶¶ 2, 3, Exs. 1, 2). But a Plaintiff need not be named on the registration in order to have standing to sue. See, e.g., Warner/Chappell Music, Inc. v. Blue Moon Ventures, No. 3:10-1160, (M.D. Tenn. Feb. 14, 2011) (relying on documents such as exclusive publishing agreements and actual copyright ownership certificates when granting a preliminary injunction in a copyright case). Indeed, the registrations and certificates of registration maintained at the Copyright Office do not necessarily reflect current ownership or control of the works identified on those documents. The registrations filed with the Copyright Office reflect the authorship and claimants at the time the registrations were filed with the Copyright Office but do not necessarily reflect subsequent transfer of rights. (Docket No. 18, p. 19). The subsequent ownership or control of the copyrights is subject to change as a result of administration/assignment agreements, catalog acquisitions, exclusive licenses, or other transfers of interest. (Docket No. 18, p. 19). A plaintiff is not legally required to record the instrument of transfer with the

---

[1] Defendants' licensing agent submitted a declaration stating that 13 of the Subject Works are in the public domain and that 12 of the Subject Works are owned 100% by third parties. (Docket No. 148, ¶¶ 3-4). Plaintiffs take issue with these assertions but has agreed to exclude these songs from the Subject Works for the narrow and limited purpose of preliminary injunctive relief. (See Docket No. 160, Pl.'s Memo. in Reply to Excel Spreadsheet and Suppl. Filings of Def.'s.) This Order shall not prohibit Defendants' exploitation of those 25 songs; neither shall it be construed as permission to exploit such works with impunity. Plaintiffs may seek to have this Order amended if they offer additional evidence with respect to any of those 25 songs.

3

Copyright Office, even if it may be beneficial to do so. Nimmer § 12.08 (citing the Berne Convention Implementation Act of 1988).

The certificates of registration and split sheets provide sufficient proof of Plaintiffs' ownership at this time. Furthermore, as Plaintiffs have noted, the fact that Defendants attempted to acquire certain compulsory licenses for "phonorecords" from Plaintiffs for the works at issue provides further evidence of Plaintiffs' ownership of the Subject Works. (See, e.g., Docket No. 157). Plaintiffs have demonstrated they are likely to succeed on the issue of ownership.

### b.   Infringement

Plaintiffs have presented sworn proof that they have not licensed Defendants to create, manufacture, sell, or distribute karaoke products in the United States. (Docket No. 17 ¶ 21). Yet Defendants have solicited customers in the United States to purchase karaoke products and have sold, reproduced, and distributed karaoke downloads based on the Subject Works to customers in this judicial district and elsewhere in the United States. (Docket Nos. 25-25.6, 28-28.12, 105-105.6, 106-106.7, 119-119.5). Defendants have also sold custom discs based on the Subject Works and caused such discs to be manufactured and distributed to customers in this judicial district. (Docket Nos. 22-22.6).

Defendants previously represented to the Court that they had removed all of the Subject Works from their website, thereby mooting Plaintiffs' application for injunctive relief. (Docket No. 85, p. 6; Docket No. 101, pp. 3-4; Docket No. 104.2). Defendants maintained that position for at least four months. (Compare Docket Nos. 104.2, email dated Dec. 2, 2014, with Docket No. 101, pp. 3-4, Memorandum of Law dated April 6, 2015). Within twelve days of the latest such representation, however, Defendants sold karaoke products based on Plaintiffs' works in the United States. (Docket Nos. 105-106.7). Defendants now admit that they continue to make

4

karaoke products based on the Subject Works available for sale in the United States, except in Tennessee, Wyoming, and California (Docket No. 140, pp. 7-8), but Defendants have not identified any license expressly permitting Defendants specific conduct.

Defendants contend that a Harry Fox Agency ("HFA") license allows Defendants to continue to copy and sell the Subject Works. (Docket No. 140, p 7; Docket No. 137.3). But the face of the HFA license reflects otherwise. Specifically, § 2.5 of the HFA license states:

> . . . You may not reproduce (other than as authorized for your own personal use), publish, transmit, distribute, publicly display, rent or lend, modify, create derivative works from, sell or participate in the sale of or exploit in any way, in whole or in part, directly or indirectly, any of the Lyrics so provided. You agree that you are not granted any so-called "karaoke" or "sing-along" rights to Lyrics . . . . You agree not to assign, transfer or transmit any Lyrics to any third party. . . .

(Docket No. 137-3). In addition, a representative of the HFA submitted a declaration stating that the HFA did not issue any license to Defendants allowing Tricerasoft to distribute or copy karaoke recordings. (Docket No. 157, Declaration of Rachel Scarpati, ¶¶ 3-11).

Further, while the HFA license authorizes the distribution of "Permanent Digital Download[s]" ("PDD") (Docket No. 137-3 § 1.7), the HFA license defines a PDD by cross reference to the definition of digital phonorecord delivery ("DPD") in 37 CFR § 385.2, which cross references the definition of DPD in 17 U.S.C. 115(d). That provision defines DPD as the delivery of a "phonorecord" by digital transmission, among other requirements. The statutory definition of "phonorecord" expressly excludes "audiovisual work[s]." 17 U.S.C. § 101.

Karaoke recordings are audiovisual works, which are exempt from the Copyright Act's compulsory licensing provisions. ABKCO Music, Inc. v. Stellar Recordings, Inc., 96 F.3 60, 65 (2nd Cir. 1996) (karaoke recordings displaying lyrics are "audiovisual works" and not "phonorecords"), abrogated on other grounds in Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010). Karaoke recordings require "synchronization" licenses for the graphic display of lyrics that

5

appear on a monitor in a synchronized presentation with the recorded music. Id. (stating that "the producers and distributors of karaoke versions of songs must acquire synchronization or 'synch' licenses from the copyright owners of the songs to legally manufacture karaoke discs"). A licensing agreement that is limited to PDDs therefore excludes karaoke recordings and Defendants have not identified any other language in the HFA licenses permitting them to sell, reproduce, and distribute karaoke recordings via internet download or custom disc.

Likewise, neither Defendants nor Defendants' suppliers have a license from MCPS/PRS allowing them to copy or distribute karaoke in the United States and Canada, as shown by the representations of PRS. (Docket No. 156, Declaration of Simon Bourn ("Bourn Decl.") at ¶¶ 6-7, 12). The MCPS/PRS licenses upon which Defendants rely have expired and were expressly limited to the distribution of downloads to persons located in the U.K. (Id., ¶¶ 6-12; Docket. No. 47, p. 4, ¶¶ 2, 4-5 and p. 8). The MCPS/PRS license also expressly forbids Defendants from soliciting orders for physical products, such as compact discs, for distribution by mail. (Docket No. 47, p. 10, p. 7 § 3.4).

The other licenses upon which Defendants rely do not authorize the conduct that Plaintiffs seek to enjoin. The licenses Defendants claim to have with co-publishers are expired according to their own terms. (Docket No. 150). Defendants admit that the direct licenses they claim to have with Plaintiffs are also expired. (Docket No. 147-1). Defendants have also not established that any of their suppliers is authorized to license and has currently licensed Defendants to sell, reproduce, and distribute karaoke recordings in the United States and Canada via internet download and custom discs. Rather, Defendants communications with their suppliers suggest the opposite. (See generally Docket No. 136.3-136.11, "Supplemental

6

Declaration of Ramona P. Desalvo" and attachments thereto). In addition, Defendants have failed to provide copies of licenses with their suppliers to support Defendants' argument.

Because the record indicates Defendants' ongoing use of the Subject Works without authorization, Plaintiffs have demonstrated that they are likely to succeed on the issue of infringement.

Based on the evidence now available to the Court, Plaintiffs have established a likelihood of success on the merits.

### 2. Plaintiffs have demonstrated that they will suffer irreparable injury.

In a copyright-infringement action, plaintiffs establish a rebuttable presumption of irreparable harm by demonstrating a likelihood of success on the merits. Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 532-33 (6th Cir. 2004); Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259 (6th Cir. 1988); Schenck v. Orosz, No. 3:13-CV-0294, 2013 WL 5963557, at *6 (M.D. Tenn. Nov. 7, 2013) ("When plaintiffs show a reasonable likelihood of success on their copyright infringement claims, the plaintiffs are entitled to a rebuttable presumption of irreparable harm."). At this stage, Plaintiffs have demonstrated a likelihood of success on the merits while Defendants have offered no evidence to rebut this presumption of harm. Plaintiffs have therefore satisfied the second prong of the preliminary injunction analysis.

### 3. The threatened injury to Plaintiffs outweighs any injury to Defendants.

In copyright cases, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." Tree Publ'g Co., 785 F. Supp. at 1277 (citing Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254 (3rd Cir. 1983)); see also Schenck, 2013 WL 5963557, at *6.

7

Plaintiffs have submitted sworn proof that Defendants have no license to exploit the Subject Works in any manner relevant to this proceeding. (Docket No. 17 ¶ 21). In contrast, Defendants have identified no license permitting the exploitation at issue, as the HFA license does not apply, see supra, and they concede in their filings that any purported license they had directly from Plaintiffs expired no later than December 2014 (Docket No. 85, p. 6). Accordingly, Defendants have not, at this time, demonstrated any protectable harm that they will suffer if enjoined from using the Subject Works.

The Court also agrees with Plaintiffs that Defendants' inconsistent statements and conduct regarding the removal of the Subject Works from their website tips the balance of the equities in Plaintiffs' favor.

**4.     The public interest is served by enjoining Defendants' conduct.**

Plaintiffs also benefit from the strong national policy favoring the protection of intellectual property: "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections." Tree Publ'g Co., 785 F. Supp. at 1276-77 (quoting Apple, 714 F.2d at 1254); Schenck, 2013 WL 5963557 at *6. Because a primary purpose of copyright law is to protect the rights of owners of intellectual property, the issuance of the injunction will benefit the public by vindicating the rights of the rightful owners of the intellectual property at issue. See id.

The Court finds that Plaintiffs have presented sufficient evidence of ownership and infringement that they are likely to succeed on the merits of their claims. This showing also entitles Plaintiffs to a presumption of irreparable harm and Plaintiffs' Application is further supported by the policy in favor of protecting copyrights. Thus, based on the record now before the Court, Plaintiffs have met the standard for a preliminary injunction.

**B.      The Court may enjoin Defendants from exploiting the Subject Works within the United States.**

Defendants may not shield their conduct by relying on the principle of non-extraterritoriality. "[W]hen a foreign corporation is alleged to have purposely injected itself into the American market by shipping infringing goods here-regardless of whether it does so directly or through an importer-the defendant should not be allowed to use the principle of non-extraterritoriality to shield itself from the reach of American courts and American copyright law." Liberty Toy Co. v. Fred Silber Co., 149 F.3d 1183 (6th Cir. 1998) (citing GB Marketing USA v. Gerolsteiner Brunnen & Co., 782 F. Supp. 763, 773 (W.D.N.Y. 1991); II William F. Patry, Copyright Law and Practice, 1091, n. 101 (1994) ("Of course, where unauthorized copies are made overseas and then shipped into the United States, jurisdiction will exist in the United States over the copies shipped into the United States.")); see also Litecubes, LLC v. N. Light Products, Inc., 523 F.3d 1353, 1371-72 (Fed. Cir. 2008) (upholding jury verdict for infringement where Canadian corporation, without offices or assets in the United States, sold infringing works to customers located in the United States).

In addition, according to the terms of the Copyright Act, the Court's preliminary injunction against Defendants "shall be operative throughout the United States." 17 U.S.C.A. § 502(b). The Court therefore may enjoin Defendants from exploiting the Subject Works in any manner within the United States, including the advertising, solicitation of purchase(s), sales, leasing, transmission and/or distribution of any kind or nature, to include conduct undertaken in Canada that is targeted toward consumers in the United States.

**C.      Conclusion**

It is therefore ORDERED that:

1. Defendants, their agents, servants, employees and all persons in active concert and participation with them are preliminarily enjoined from copying, recording, manufacturing, advertising, distributing, selling, offering for sale, transmitting or otherwise exploiting or causing to be used in any manner in the United States the subject matter of the musical compositions owned and/or administered by Plaintiffs, including those identified in Exhibits 1 – 16 hereto, except for the following 25 Subject Works:

| Over There |
|---|
| I'll Be With You in Apple Blossom Time |
| I'll Take You Home Again, Kathleen |
| You Made Me Love You (I Didn't Want To Do It) |
| I Heard the Bells on Christmas Day |
| Auld Lang Syne |
| Jingle Bells |
| Silent Night |
| Rock-A-Bye Your Baby With a Dixie Melody |
| Hey Diddle Diddle |
| I'm Henery The Eighth, I Am |
| 'Ulili E |
| Paddy McGinty's Goat |

| | |
|---|---|
| School's Out | Alice Cooper |
| Shake A Tail Feather | Blues Brothers |
| We Go Together | Grease |
| Maria | The Sound Of Music |
| I Wish | Jo Dee Messina |
| Faithfully | Journey |
| Lights | Journey |
| Open Arms | Journey |
| Sunshine On My Shoulders | John Denver |
| Mean To Me | Linda Ronstadt |
| Best of You | Foo Fighters |
| Baby Face | Various Artists |

The Subject Works less these 25 compositions are referred to below as the "Enjoined Subject Works."

2. The Declaration of Plaintiffs' Licensing Analyst, Annie Schleicher, attests that Plaintiffs first learned of the Defendants' website selling unauthorized karaoke recordings of Plaintiffs works, on March 1, 2012. (Docket No. 19, ¶¶ 8-10). This suit was filed on October 1, 2014 (Docket No. 1), well within the Statute of Limitations requiring filing of such claims within three years of discovery of the infringement. Therefore, Plaintiffs' claims capture infringement occurring at least as far back as October 1, 2011.

3. In order to facilitate compliance with this Order, Defendants shall disclose to Plaintiffs, in writing within 21 days of the entry of this Order, all karaoke recordings that Defendants have advertised, made available for sale, distributed and/or sold since the inception of its internet sales operations, whenever the inception may have occurred, until the present time. Plaintiffs shall review and notify the Defendants within 21 days thereafter of any additional musical compositions owned or controlled by Plaintiffs that Defendants have exploited and that Plaintiffs believe are not licensed. Within 21 days thereafter, and in the event Defendants cannot verify that the additional karaoke recordings are actually licensed, this Preliminary Injunction shall be modified to include the additional unlicensed karaoke recordings and the notifications and time for performance by Defendants, as set forth below, shall apply equally to such additional karaoke recordings.

4. Defendants, their agents, servants, employees, and all persons in active concert and participation with them shall, within 14 days of the entry of this Order, take all necessary steps to remove all of the Enjoined Subject Works from their website or otherwise make such karaoke recordings unavailable to all consumers in the United States and shall within 2 days thereafter provide Plaintiffs' counsel with a sworn declaration confirming compliance with this paragraph.

5. Defendants shall, within 14 days of the entry of this Order, notify any of Defendants' manufacturers, suppliers, distributors, dealers, retailers, internet sellers, warehouse facilities, internet download services/software providers and any and all other commercial entities in possession of any copies of karaoke recordings of the Enjoined Subject Works, of the entry of this Order (including providing each such person or entity with a copy of this Order) and that no further copying, sales, distribution, advertising, "sampling," "previewing," or use of any kind or nature whatsoever of such unlicensed materials shall be permitted until further Order of this Court.

6. Defendants shall also notify all of their downstream distributors/resellers and warehouse facilities, internet services/software providers and any and all other commercial entities (as opposed to consumer purchasers) in possession of any copies of materials to <u>return</u> any karaoke recordings manufactured, copied, sold, and/or distributed by Defendants, their agents, servants, employees, and all persons in active concert and participation with them, containing any of the Enjoined Subject Works. Such notice shall require the return of the recordings within 21 days of receipt of a copy of this Order and shall direct that the returned goods be sent to counsel for the Defendants, Ramona DeSalvo, DeSalvo & Levine, 1720 West End Ave., Suite 403, Nashville, Tennessee 37203. Any distributors/resellers receiving notice of the entry of this injunction and recall shall be bound by the terms of this Order as if a party to the case. Non-compliance with the recall and return obligations of this Order shall be punishable to the full extent of the law including proceedings for contempt.

7. Within 30 days of the entry of this Order, Defendants shall provide Plaintiffs' counsel with a sworn Declaration listing all manufacturers, distributors, retailers, internet sellers, warehouse facilities and any and all other commercial entities notified pursuant to the provisions

of the Order and/or in possession of any copies of karaoke recordings of the Enjoined Subject Works and confirm in writing, as applicable, that each such person or entity has been notified and provided with a copy of this Order of his/its obligations pursuant to this Order, which confirmation to Plaintiffs shall include a copy of such notification and documents sufficient to confirm notification.

8. In the event Plaintiffs perceive any non-compliance with the provisions of this Order with respect to Defendants, written notice of any alleged violation(s) shall be sent to Defendants' counsel identifying the acts of Defendants and/or the particular karaoke recording and any other identifying information which Plaintiffs believe to be in violation of this Order, and a 7 day opportunity to cure shall be observed prior to Plaintiffs filing any Motion for Contempt with the Court.

9. Defendants are further preliminarily enjoined from destroying, deleting, transferring, concealing or otherwise adversely impairing any materials that may be discoverable or used as evidence in the trial of this case. Said matters include, but are not necessarily limited to, digital records relating to the allegedly infringing products including, but not limited to, web content, sales records, purchase records, advertising materials, servers, computers, digital karaoke recordings or karaoke discs containing one or more recordings of the Enjoined Subject Works, and any and all other materials which may be the subject of discovery proceedings and/or constitute evidence in these proceedings.

10. The Court further finds that $20,000 is the amount that this Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully restrained. The Court orders Plaintiffs to post security sufficient to pay that amount.

It is SO ORDERED.

_Kevin H. Sharp_
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE