IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SONY/ATV MUSIC PUBLISHING )
LLC, *et al.*, )
 )
    **Plaintiffs,** )
 )
    v. )    Civil No. 3:14-cv-1929
 )    Judge Sharp
1729172 ONTARIO, INC., *et al.*, )
 )
    **Defendants.** )

## MEMORANDUM

Plaintiffs/Counter-Defendants ("Counter-Defendants") are two groups of music publishers commonly known as "Sony/ATV" and "EMI." Defendants/Counter-Plaintiffs ("Counter-Plaintiffs") are TriceraSoft, a Canadian corporation that develops karaoke software and distributes third-party karaoke recordings, and Gai Marcos, owner and director of TriceraSoft.[1] This is a copyright infringement action stemming from Counter-Defendants' allegations that Counter-Plaintiffs were unlawfully using musical compositions (referred to herein as the "Subject Works") in which Plaintiffs/Counter-Defendants have ownership interests. Counter-Plaintiffs dispute the infringement allegations and have filed their own counterclaims.

Presently pending before the Court is a Motion to Dismiss the "First," "Third," Fourth" and "Sixth" Causes of Action ("Motion to Dismiss") by Counter-Defendants, (Docket No. 320), in which Counter-Defendants seek dismissal of four of the six counterclaims brought by Counter-Plaintiffs. Counter-Plaintiffs have filed a Response in Opposition to the Motion to Dismiss. (Docket No. 336). For the reasons set forth below, the Motion to Dismiss will be granted.

---

[1] Defendant TriceraSoft is also known as 1729172 ONTARIO, INC.

1

## I. Factual & Procedural Background

The factual underpinnings of this dispute have been set forth by the Court on previous occasions. (Docket Nos. 181, 254). Now at issue are the factual allegations as set forth in Counter-Plaintiffs' Amended Answer and Counterclaims.[2] Counter-Plaintiffs sell karaoke software and karaoke recordings, which customers may purchase online and download. Counter-Plaintiffs allege that they sought, obtained, and relied on "licenses specified by and negotiated with Counter-Defendants, directly and/or indirectly, and at all times, accounted to and paid royalties and fees to Counter-Defendants and/or their agents for such licenses." (Docket No. 389 at ¶ 53).

Without explaining the relevance, the Answer details Counter-Plaintiffs' licensing negotiations with the Harry Fox Agency, a non-party licensing agent for many United States music publishing entities, including Counter-Defendants. HFA had not previously licensed karaoke downloads from an international distributor and, as such, did not have a licensing scheme in place at the outset of negotiations. Counter-Plaintiffs worked with HFA to develop a workable licensing scheme and "HFA developed a unique license and accounting system for TriceraSoft to report each karaoke download to HFA." (Id. ¶ 58). Counter-Plaintiffs do not allege that the HFA licenses somehow bound Counter-Defendants, nor do they allege that Counter-Defendants made any representations regarding the HFA licenses prior to this litigation.

Counter-Plaintiffs also used the services of Dara Lupowitz at Dara's Music Services, Inc. ("DMS") to seek licenses directly from Counter-Defendants. Counter-Plaintiffs allege that EMI issued a direct license covering their use of some of the Subject Works in July 2012, but never

---

[2] Counter-Defendants' Motion to Dismiss was filed in response to Counter-Plaintiffs' original Answer to the Amended Complaint, (Docket No. 192). However, the pleadings have since been amended, with Counter-Plaintiffs making only minor changes to the allegations set forth in their Answer and Counterclaims to the Second Amended Complaint ("Amended Answer and Counterclaims"), (Docket No. 389). Accordingly, the Court will consider the sufficiency of the Amended Answer and Counterclaims in considering Counter-Defendants' Motion to Dismiss.

actually signed the license because it fell through the cracks when Counter-Defendants had personnel changes in the fall of 2012. Counter-Defendants had to reissue the license and resend it to Counter-Plaintiffs in November 2012. Although Counter-Plaintiffs again executed the renewed license in December 2012, Counter-Defendants again failed to sign it. Counter-Defendant EMI did accept a $5,000.00 advance royalty payment, but email correspondence indicates that their acceptance may have been inadvertent, and Counter-Defendants rejected all other royalty payments. In so doing, they expressly noted that no formal license existed. (Docket No. 19-10, May 10, 2013 email from Annie Shleicher at Sony to Dara Lupowitz) ("As we've discussed, Sony/ATV and EMI don't have fully executed agreements and no payments should be sent until we have an agreement in place."). Since initiating this litigation, Counter-Defendants have returned the $5,000.00 advance royalty payment to Counter-Plaintiffs.

Counter-Defendants assert that the parties never actually finalized any licenses and that any use of the Subject Works by Counter-Plaintiffs was unlawful infringement. The parties have been vigorously litigating those infringement claims for nearly two years. The Court has enjoined Counter-Plaintiffs from using any of the Subject Works in their karaoke productions. Counter-Plaintiffs assert their own causes of action, most of which arise from the failed license negotiations. Specifically, Counter-Plaintiffs bring the following claims: Unfair Trade Practices[3]; Tortious Interference with Business Relationships; Fraud; Negligent Misrepresentation; Declaratory Relief; and Abuse of Process. In support of their counterclaims, Counter-Plaintiffs allege that Counter-Defendants misrepresented the status of the licenses such that Counter-Plaintiffs thought they had valid agreements for the use of the Subject Works. Counter-Plaintiffs assert that Counter-Defendants never intended to execute the licenses and

---

[3] Counter-Plaintiffs allege Unfair Trade Practices in violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*

3

were instead attempting to induce the Counter-Plaintiffs to use the Subject Works in order to create grounds for an infringement lawsuit. Counter-Plaintiffs also argue that Counter-Defendants have been abusing the litigation process in an attempt to drive up the costs of this case and thereby harm Counter-Plaintiffs.

Counter-Defendants seek dismissal of four of the counterclaims. They argue that Counter-Plaintiffs have failed to present sufficient factual allegations to support their counterclaims, especially in light of the fact that a heightened pleading standard applies to at least three of the causes of action. Counter-Plaintiffs respond that their Amended Answer and Counterclaims and Counterclaims include sufficient factual allegations to withstand the Motion to Dismiss.

## II.     The Applicable Law & Pleading Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true the allegations made in the complaint—here, the Amended Answer and Counterclaims—and construe the allegations in the non-moving party's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions are not entitled to the assumption of truth, Iqbal, 556 U.S. at 578-79, and "a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). Further, in determining whether a complaint sets forth a plausible claim, a court may consider

not only the allegations, but "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." Ley v. Visteon Corp., 543 F.3d 801, 805 (6th Cir. 2008) (citation omitted).

A higher pleading standard applies to claims of fraud. Schmidt v. Martin, 2005 WL 2100645, at *2 (W.D. Tenn. Aug. 19, 2005). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit instructs that a party claiming fraud must "allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." Chesbrough v. VPA, P.C., 655 F.3d 461, 467 (6th Cir. 2011). Counter-Defendants assert that three of Counter-Plaintiffs' counterclaims sound in fraud and therefore must conform to Rule 9(b).[4] The Court agrees.

Counter-Plaintiffs' third cause of action, which is a claim for fraud, clearly falls within the purview of Rule 9(b). Rule 9(b) also applies to Counter-Plaintiffs' first cause of action, their TCPA counterclaim. See Metro. Prop. & Cas. Ins. Co. v. Bell, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (stating that "allegations of fraud must be pleaded with specificity" and applying that requirement to § 47-18-109 of the TCPA); Sony/ATV Music Pub. LLC v. D.J. Miller Music Distributors, Inc., No. 3:09-cv-01098, 2011 WL 4729811, at *9 (M.D. Tenn. Oct. 7, 2011) ("Courts have consistently held that claims brought pursuant to the TCPA

---

[4] All but two of Counter-Plaintiffs' causes of action state common law claims, including claims for fraud, negligent misrepresentation, tortious interference, and abuse of process. Yet Counter-Plaintiffs fail to specify what law governs these claims. It is well-established that "[t]here is no federal general common law," Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and federal courts cannot create common law unless it is to "protect a uniquely federal interest," Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 (1981). And while this Court is technically sitting in diversity, it has jurisdiction over Counter-Plaintiffs' claims not under the diversity statute, 28 U.S.C. § 1332, but under the supplemental jurisdiction provision, 28 U.S.C. § 1367. Still, both parties seem to rely on Tennessee law and the Court discerns no problem with applying the substantive law of the forum state. Accordingly, the Court will rely on Tennessee common law when analyzing Counter-Plaintiffs' common law claims.

must satisfy a heightened pleading standard.")[5] Likewise, the current consensus of federal courts applies Rule 9(b) to claims for negligent misrepresentation, Counter-Plaintiffs' fourth cause of action. See Pugh v. Bank of Am., No. 13-2020, 2013 WL 3349649, at *16 (W.D. Tenn. July 2, 2013) (reviewing Tennessee case law on this issue and collecting federal cases that have applied Rule 9(b) to claims of negligent misrepresentation in Tennessee).[6] Accordingly, the Court will apply Rule 9(b)'s heightened standard to Counter-Plaintiffs' first, third, and fourth causes of action. The sixth cause of action, Counter-Plaintiffs' claim for abuse of process, need only satisfy the plausibility pleading standard encompassed by Rule 8.

## III. Legal Analysis

The four causes of action at issue in this Motion to Dismiss are all doomed by a common defect: an overwhelming lack of specific factual allegations. The Amended Answer and Counterclaims is rife with legal conclusions, but Counter-Plaintiffs repeatedly fail to buttress those conclusions with any factual allegations that might support their desired inference. The mere invocation of statutory elements, without also including a factual basis on which to rest such elements, is precisely the type of pleading against which the Supreme Court cautioned in Twombly and Iqbal. The Court will address the specific pleading defects that thwart each of the four counterclaims at issue, but notes this common deficiency to explain why the following analysis may (pardon the pun) begin to sound a bit like a broken record.

---

[5] See also Walker v. Frontier Leasing Corp., No. E2009-01445-COA-R3-CV, 2010 WL 1221413 (Tenn. Ct. App. Mar. 30, 2010) (noting that while allegations of fraud under the TCPA "can be 'plain and simple,' they [nevertheless] must be particular enough that the fraud can be seen on the face of the complaint").

[6] See also In re Nissan N. Am., Inc. Odometer Litig., 664 F. Supp. 2d 873, 881 (M.D. Tenn. 2009) ("Rule 9(b)'s heightened pleading standard clearly applies to the plaintiffs' state law claims of fraud and negligent misrepresentation."); Marshall v. ITT Tech. Inst., No. 3:11-CV-552, 2012 WL 1205581, at *3 (E.D. Tenn. Apr. 11, 2012); Western Express, Inc. v. Brentwood Servs., Inc., No. M2008–02227–COA–R3–CV, 2009 WL 3448747, at *10 (Tenn. Ct. App. Oct. 26, 2009).

A. Counter-Plaintiffs' First Cause of Action: TCPA Violation

Counter-Plaintiffs assert that Counter-Defendants have violated the TCPA, a statute dedicated to protecting consumers from the use of "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). To establish a prima facie claim under the TCPA, a plaintiff must establish: (1) an ascertainable loss of money or property; (2) that such loss resulted from an unfair or deceptive act or practice; and (3) that the act or practice is declared unlawful under the TCPA. Tenn. Code Ann. § 47-18-109. Although the TCPA imposes no single standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as "'a material representation, practice, or omission likely to mislead . . . reasonable consumers' to their detriment." Fayne v. Vincent, 301 S.W.3d 162, 177 (Tenn. 2009) (quoting Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997) (quoting Bisson v. Ward, 628 A.2d 1256, 1261 (1993)). As noted above, Counter-Plaintiffs' TCPA claim is subject to Rule 9(b). Accordingly, Plaintiff must "set forth specific fraudulent or deceptive acts rather than general allegations." AGFA Photo USA Corp. v. Parham, No. 1:06-cv-216, 2007 WL 1655891, at *11 (E.D. Tenn. June 5, 2007).

In their Response in Opposition, Counter-Plaintiffs allege violations of five subsections of the TCPA:

> (3)  Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;
> (5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
> (8)  Disparaging the goods, services or business of another by false or misleading representations of fact;
> (9)  Advertising goods or services with intent not to sell them as advertised;
> (13)  Representing that a service, replacement or repair is needed when it is not.

7

Tenn. Code Ann. §§ 47-18-104(b)(3), (5), (8), (9), (13). The Court will address each subsection in turn.

According to Counter-Plaintiffs, Counter-Defendants' conduct caused them "to suffer confusion and misunderstanding as to Counter-Defendants' affiliation, connection, and/or association with the owners of certain of the Subject Works and with certain licensing agents around the world." (Docket No. 192 at ¶ 93). None of the allegations support such a claim. Counter-Plaintiffs make no allegations about any confusing or misleading representations made by Counter-Plaintiffs regarding their ownership interest in the Subject Works. Rather, Counter-Defendants have consistently asserted such an interest and Counter-Plaintiffs' efforts to obtain licenses indicates an understanding of the same. Although Counter-Plaintiffs may have been confused about the status of their direct licenses, their confusion did not relate to Counter-Defendants' ownership interest in the Subject Works. Neither is that confusion of the type that would support a TCPA claim. The Amended Answer and Counterclaims is devoid of allegations that could support a claim under Section 47-18-104(b)(3).

Counter-Plaintiffs next allege that Counter-Defendants violated Subsection 104(b)(5) by representing that Counter-Plaintiffs had "approval, characteristics, uses, and/or benefits" of the Subject Works via licenses but later maintaining that no valid licenses existed. This claim fails because Counter-Plaintiffs identify no specific statements or representations wherein Counter-Defendants indicated that the licenses had been fully executed and therefore that Counter-Plaintiffs actually had approval. As discussed further below in Section II.B, infra, the evidence in the record actually indicates the opposite: that Counter-Defendants consistently stated that the parties had not yet formalized a licensing agreement. Absent the identification of any specific

8

statements that Counter-Plaintiffs had approval, Counter-Plaintiffs have fallen short of Rule 9(b)'s particularity requirement.

Regarding Subsection 104(b)(8), Counter-Plaintiffs make absolutely no specific allegations regarding when or how Counter-Defendants disparaged them through false or misleading representations of fact. It seems that Counter-Plaintiffs believe that the infringement claims which form the basis of this litigation constitute disparagement. Until the merits of those claims are resolved, Counter-Plaintiffs cannot demonstrate that the claims of infringement were, in fact, false. Moreover, it would be incongruous for the Court to deem Counter-Defendants' infringement allegations to be disparagement after previously determining that those very same allegations were meritorious enough to support a preliminary injunction. Apart from the underlying infringement allegations, Counter-Plaintiffs identify no statements, public or otherwise, that the Court could conceivably construe as disparagement. The Subsection 104(b)(8) claim fails.

Neither do Counter-Plaintiffs include any allegations regarding advertisements under Subsection 104(b)(9). Their Amended Answer and Counterclaims instead indicates that it was they who initiated contact with Counter-Defendants because of their ownership interest in the Subject Works. Thus, their negotiations arose not from advertising but from targeted outreach by Counter-Plaintiffs. The Amended Answer and Counterclaim also includes allegations indicating that Counter-Defendants did intend to provide the licenses, even if they did not ultimately do so. If Counter-Defendants had no such intent, then it seems unlikely that they would have renewed the license after personnel changes caused it to slip through the cracks. Thus, Counter-Plaintiffs' own allegations undermine their counterclaim under Subsection 104(b)(9).

Finally, regarding Subsection 104(b)(13), Counter-Plaintiffs do not allege that the "services" of Counter-Defendants—namely, licenses to use the Subject Works—are not necessary to Counter-Plaintiff's business. To the contrary, all parties seem to agree that permission *is necessary* for Counter-Plaintiffs' lawful production of karaoke downloads. The claim under subsection 104(b)(13) also fails.

With regard to the alleged TCPA violations, Counter-Plaintiffs have presented nothing more than a mechanical recitation of the statutory elements. They provide no specific factual allegations to support their claims, rendering them suspect under Rule 8 and woefully inadequate under Rule 9(b)'s heightened pleading standard. Counter-Plaintiffs' counterclaim for unfair and deceptive trade practices will be dismissed.

B. Counter-Plaintiffs' Third Cause of Action: Fraud

Counter-Plaintiff's claim of fraud is premised on allegations that Counter-Defendants knowingly misrepresented and/or omitted material facts regarding their intention to enter into licenses with Counter-Plaintiffs. This counterclaim must satisfy Rule 9(b). "Actions for fraud contain four primary elements: (1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; [and] (4) 'that the misrepresentation relates to an existing or past fact[.]'" Dog House Investments, LLC v. Teal Properties, Inc., 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (quoting Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)), appeal denied, (Mar. 18, 1991). Counter-Plaintiffs base their fraud claim on the theory of promissory fraud, which requires that the misrepresentation embody a promise of future action without the present intention to carry out the promise. Id. (citing Steed Realty v.

Oveisi, 823 S.W.2d 195, 200 (Tenn. Ct. App. 1991) (citing Fowler v. Happy Goodman Family, 575 S.W.2d 496, 499-500 (Tenn. 1978))). Counter-Plaintiffs state that Counter-Defendants made "misrepresentations concerning [ ] licenses," which "embodied a promise of future action without the intention to carry out such promise." (Docket No. 389 at ¶ 137). Promissory fraud must be shown by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promise. Farmers & Merchants Bank v. Petty, 664 S.W.2d 77, 80-81 (Tenn. Ct. App. 1983).

Counter-Plaintiffs premise their fraud claim on the fact that Counter-Defendants never executed and formalized the licenses. In order for the failed negotiations to constitute promissory fraud, Counter-Plaintiffs would need to include specific factual allegations regarding Counter-Defendants' intent. Yet there is nothing in the Amended Counterclaim and Answer that would suggest that Counter-Defendants were negotiating the licenses in bad faith or planned all along not to formalize them. Compounding the lack of allegations regarding intent are multiple emails in the record which indicate good faith efforts by Counter-Defendants to reach a licensing agreement. (Docket Nos. 19-1 and 19-2). Thus, Counter-Plaintiffs' counterclaim for fraud suffers not only from a dearth of specific factual allegations but also from contradictory evidence. The counterclaim for fraud will be dismissed.

    C. <u>Counter-Plaintiffs' Fourth Cause of Action: Negligent Misrepresentation</u>

Counter-Plaintiffs' fourth cause of action asserts that Counter-Defendants were negligent in their communications regarding the licenses. As noted above, this claim, too, must satisfy Rule 9(b). In order to state a claim for negligent misrepresentation in Tennessee, a "plaintiff must establish 'that [1] the defendant supplied information to the plaintiff; [2] the information was false; [3] the defendant did not exercise reasonable care in obtaining or communicating the

information[;] and [4] the plaintiffs justifiably relied on the information.'" Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (quoting Williams v. Berube & Assocs., 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)).

As with their counterclaim for fraud, Counter-Plaintiffs' claim for negligent misrepresentation fails because they have not identified any false information supplied to them by Counter-Defendants. Again, they do not point to any specific statements in which Counter-Defendants represented or implied that the parties had formalized a licensing arrangement. Where "the particular misrepresentations" are "not elucidated in the complaint," dismissal of a negligent misrepresentation claim is proper. PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525 (Tenn. Ct. App. 2012). And, as with the counterclaim for fraud, evidence in the record flatly contradicts the notion that Counter-Defendants misrepresented that status of the licenses. Email correspondence between the parties instead shows that Counter-Defendants repeatedly disavowed the notion that the parties had reached a formal licensing agreement. (Docket Nos. 19-5, 19-10, and 19-11). Because of both the absence of sufficient factual allegations and the presence of contradictory evidence, the counterclaim for negligent misrepresentation will be dismissed.

### D. Counter-Plaintiffs' Sixth Cause of Action: Abuse of Process

Finally, Counter-Defendants seeks dismissal of the sixth counterclaim, which is for abuse of process. Claims for abuse of process turn on the purpose for which a party invokes the judicial system. Abuse of process is "misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 400 (Tenn. 2002) (internal quotation marks omitted). To recover on a claim for abuse of process, a party must establish two elements: "(1) the existence of an

ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." Id. at 400-01 (internal quotation marks omitted). Regular use of a court's process does not ordinarily give rise to abuse of process. Indeed, "no claim of abuse will be heard if process is used for its lawful purpose, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party." Id. at 401.

Counter-Plaintiffs do not address their abuse of process counterclaim in their General Allegations. In the cause of action itself, they allege that Counter-Defendants filed unnecessary documents and motions, and engaged in duplicative and onerous discovery, all with the intent of increasing "the burden and expense of litigation" and harassing Counter-Plaintiffs. (Docket No. 389 at ¶¶ 154-165). The only example or specific allegation included in this cause of action is Counter-Defendants' filing of a Second Amended Complaint. (Id. at ¶ 161). The Court specifically granted Counter-Defendants leave to make file the Second Amended Complaint and, in so doing, rejected Counter-Plaintiffs' arguments that the proposed amendments were in bad faith. (Docket No. 381).[7] The Second Amended Complaint is decidedly not an abuse of process. Out of the ample filings on the record, Counter-Plaintiffs do not identify any others that are allegedly abusive.[8] Neither do Counter-Plaintiffs include any factual allegations regarding motive. Once again, on this front, they offer only conclusory statements.

Absent any examples of abusive process or factual allegations regarding intent, Counter-Plaintiffs simply cannot support an abuse of process claim. Counter-Plaintiffs sixth cause of action will also be dismissed.

---

[7] In an Order filed contemporaneously herewith, the Court denies Counter-Plaintiffs' Motion for Review, (Docket No. 385), which sought review and modification of the Court's previous decision to grant Count-Defendants leave to file a second amended complaint, (Docket No. 381).
[8] Indeed, although they lambast the sheer volume of filings in this case, even a cursory glance at the docket in this case shows that it is actually Counter-Plaintiffs, not Counter-Defendants, who most often resort to the Court.

## IV. Conclusion

Counter-Plaintiffs' allegations in their Amended Answer and Counterclaims amount to little more than a recitation of the statutory elements of their claims. They fail to identify with particularity any misrepresentations that could support their counter claims for fraud, negligent misrepresentation, or violations of the TCPA. Their paltry allegations are plainly insufficient, especially in light of Rule 9(b)'s heightened pleading standard. Moreover, because they have not identified any abusive filings or included any allegations indicative of bad faith by Counter-Defendants, their claim for abuse of process also falls short. The insufficient allegations are enough to warrant dismissal, but the existence of contradictory evidence in the record confirms that the claims are baseless. Accordingly, the Court will grant Counter-Defendants' Motion to Dismiss.

A separate order shall enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE