IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE, TENNESSEE

| | |
|---|---|
| SONY/ATV MUSIC PUBLISHING LLC, *et al.* ) ) ) v. ) ) ) 1729172 ONTARIO, INC., *et al.* ) | No. 3:14-cv-1929 Judge Trauger Magistrate Judge Holmes |

**To: Honorable Aleta A. Trauger, District Judge**


## REPORT AND RECOMMENDATION

Pursuant to this Court's Order entered March 6, 2017 (Doc. No. 629), this case was referred

to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) for report and

recommendation on Plaintiffs' request for sanctions, default damages and a permanent injunction.

In their motion (Doc. No. 651), Plaintiffs seek entry of default judgments against 1729172 Ontario,

Inc., d/b/a TriceraSoft ("TriceraSoft"), Gai Marcos (together with TriceraSoft, the "TriceraSoft

Defendants"), SBI Global Ltd., James Gerald Woodford, Digitop Ltd., Gary Ian Oates, Music

Factory Entertainment Group, Peter Parkin, Zoom Entertainments Ltd. and Joe David Blackie

(entire group, the "Defaulted Defendants").[1] Plaintiffs request that the Court (1) make permanent

the Preliminary Injunction, (2) award Plaintiffs maximum statutory damages and costs, including

attorneys' fees pursuant to the Copyright Act and (3) dismiss the TriceraSoft Defendants' two

remaining counterclaims.[2] A hearing was conducted on December 6, 2017. Appearing for the

---

[1] Plaintiffs settled, released and dismissed their claims against the remaining Defendants while reserving all rights against the TriceraSoft Defendants as joint tortfeasors. (Doc. Nos. 537, 567, 618.)

[2] Although the Court dismissed four of the TriceraSoft Defendants' six counterclaims (Doc. No. 464), two are still pending. Those counterclaims are for (1) a declaration of non-infringement

hearing were Paul Harrison Stacy and Timothy Warnock for Plaintiffs. No appearance was made by or on behalf of the Defaulted Defendants. Subsequently, at the direction of the Court (see Order at Doc. No. 656), Plaintiffs submitted proposed findings of fact and conclusions of law (Doc. No. 657 with accompanying exhibits). After review of Plaintiffs' proposed findings and conclusions, and the entire record in this case, and based on the following, the undersigned respectfully recommends that Plaintiff's motion for sanctions against the Defaulted Defendants, default damages and a permanent injunction (Doc. No. 651) be GRANTED.

Also pending is Plaintiffs' Motion for Sanctions (Doc. Nos. 513 through 514-2). Plaintiffs seek sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, against the TriceraSoft Defendants and Ramona P. DeSalvo ("DeSalvo"), who was counsel for the TriceraSoft Defendants in this lawsuit until she was granted permission to withdraw on November 16, 2016 (*see* Doc. No. 551). As relief for the alleged sanctionable conduct, Plaintiffs seek entry of an order: (1) granting their motion; (2) awarding sanctions in favor of the Plaintiffs and against the TriceraSoft Defendants and Ms. DeSalvo, including the striking of all pleadings found to be in violation of Rule 11; (3) granting leave to Plaintiffs to separately file evidence monetizing the damages arising from the sanctionable conduct and, thereafter, an award of all reasonable attorneys' fees and costs incurred by Plaintiffs in adjudication of the sanctionable conduct; and, (4) other and further relief as the Court deems appropriate in the circumstances. *Id.* at 7. Defendant Gai Marcos filed a *pro se* response in opposition to the motion (Doc. No. 568)[3] and Ms. DeSalvo filed a response in opposition (Doc. No. 579). Also before the Court is Plaintiffs'

---

and (2) tortious interference. Both claims are inconsistent with the finding of liability against the TriceraSoft Defendants.

[3] DeSalvo was granted permission to withdraw approximately one month after the motion for sanctions was filed. The TriceraSoft Defendants did not subsequently retain substitute counsel.

reply. *See* Doc. No. 614. By order entered on April 30, 2018, Plaintiffs' motion for sanctions was referred to the undersigned Magistrate Judge for disposition. *See* Doc. No. 660. As to the TriceraSoft Defendants, the requested relief is already dealt with in the recommended disposition of Plaintiffs' motion for default judgments and other relief. After review of the entire record in this case, and based on the discussion below, the undersigned respectfully recommends that Plaintiff's motion for sanctions against Ramona DeSalvo (Doc. No. 513) be DENIED.

## I. Reported and Recommended Findings of Fact

### A. Procedural History

1. The original Plaintiffs — two groups of music publishers commonly known as "Sony/ATV" and "EMI" — filed this action on October 1, 2014, alleging copyright infringement. (Doc. No. 1 at 3-4.) The original Defendants were TriceraSoft and the owner of TriceraSoft, Gai Marcos (collectively, the "TriceraSoft Defendants"). (*Id.* at 4 – 6.)

2. On April 8, 2016, with leave of Court, the Plaintiffs filed the Verified Second Amended Complaint for Injunction and Damages, which added additional Plaintiffs as well as additional Defendants that supplied TriceraSoft with unlicensed recordings. (Doc. Nos. 381 and 382.)

3. The TriceraSoft Defendants filed affirmative defenses and counterclaims. (Doc. Nos. 255 and 390.)

4. On September 25, 2015, the Court entered a Preliminary Injunction against the TriceraSoft Defendants "and all persons in active concert and participation with them." (Doc. No. 254, p. 10.)

5.      The TriceraSoft Defendants appealed the grant of the Preliminary Injunction. (Doc. No. 267.)  The United States Court of Appeals for the Sixth Circuit affirmed, on every issue, this Court's order granting the Preliminary Injunction. (Doc. Nos. 430 and 433.)

6.      On December 9, 2015, Plaintiffs filed a Motion to Show Cause Why Defendants Should Not be Held in Contempt based upon the TriceraSoft Defendants' continued large scale distribution of karaoke recordings of Plaintiffs' copyrighted works. (Doc. Nos. 309 – 314-8.)  The Court granted the motion and ordered the TriceraSoft Defendants to show cause. (Doc. 590.) On December 22, 2016, the Court found the TriceraSoft Defendants in contempt, entered a sanction of $250,000.00 against them, and awarded Plaintiffs' counsel attorneys' fees and costs of $173,491.67. (Doc. No. 601, p. 9.)

7.      To-date, the TriceraSoft Defendants have not provided any evidence of their compliance with the Court's Order for Contempt and Sanctions. (*See* Doc. No. 653, ¶ 10.) Nor have the TriceraSoft Defendants paid the $250,000 penalty for contempt or any of Plaintiffs' attorneys' fees and costs. (*Id.*)

8.      While providing some information during the discovery period, the TriceraSoft Defendants failed to supply adequate information for Plaintiffs to fully evaluate the extent and amount of infringement damages.  This resulted in multiple motions to compel by Plaintiffs. *See e.g.* Doc. No. 94 and Doc. No. 183.

9.      Ultimately, despite never having received a complete production of documents, Plaintiffs noticed the depositions of the TriceraSoft Defendants for October 26 and 27, 2016. Neither Mr. Marcos nor any other representative of TriceraSoft appeared or produced the documents that Plaintiffs requested, either in the requests for production or in the notices of deposition. Plaintiffs therefore filed yet another Motion to Compel. (Doc. No. 547.)

10.     Following a November 22, 2016 in-court status conference, during which Mr. Marcos participated telephonically, depositions were again rescheduled for January 12 and 13, 2017, in Toronto, Canada. (Doc. No. 585.)

11.     In the interim between the November 22, 2016 status conference and the depositions scheduled for January 2017, two scheduled hearings occurred—a December 5 hearing on the motion for an order to show cause and the subsequent December 8 show-cause hearing—at which neither Mr. Marcos nor any other representative of TriceraSoft appeared. *See* Order at Doc. No. 590.  Based on the failure of the TriceraSoft Defendants to appear for court hearings as directed, Plaintiffs requested that the Court change the location of the January 12 and 13, 2017, depositions from Toronto, Canada, to Nashville, Tennessee. (Doc. No. 594).  After notice to Mr. Marcos and Tricerasoft (Doc. Nos. 596 and 600), the Court conditionally denied the motion (Doc. 603), allowing Mr. Marcos to produce documents by December 30, 2016, and if production occurred by that date, the depositions were to proceed in Toronto.

12.     Because, however, production did not occur prior to December 30, 2016, Mr. Marcos was required to appear for the depositions in Nashville in the courtroom in both his individual capacity and as a representative of TriceraSoft.  (Doc. Nos. 604 and 605.)

13.     The Court repeatedly warned the TriceraSoft Defendants of the potential consequences if Mr. Marcos on his own behalf or as the corporate representative for TriceraSoft failed to comply with the Court's orders, including the possibility of entry of default. (Doc. Nos. 596 and 603.)  Yet Defendants Marcos and Tricerasoft again failed to produce the documents and failed to appear for the depositions as ordered.  (Doc. No. 639, p. 8.)

14.     On February 20, 2017, Plaintiffs filed their Motion for Entry of Default as a Sanction. (Doc. No. 620.) On March 16, 2017, Defendant Marcos filed "Defendants' Response" to Plaintiffs' Motion. (Doc. No. 633.)

15.     On July 28, 2017, the undersigned Magistrate Judge issued a Report and Recommendation (Doc. No. 639) that Plaintiffs' Motion for Entry of a Sanction of Default be granted. The TriceraSoft Defendants filed no objection to the Report and Recommendation.

16.     By order entered on October 2, 2017 (Doc. No. 644), the Report and Recommendation was adopted, and the Clerk was directed to enter defaults against the TriceraSoft Defendants. The Clerk entered the defaults on October 6, 2017. (Doc. No. 646.)

17.     The Court then set a December 6, 2017, hearing regarding damages and any other relief requested and further ordered Plaintiffs to file and serve the Defaulted Defendants with any affidavits, memoranda, or other supporting filings by November 22, 2017. (Doc. No. 648.) Plaintiffs did so on November 22 and requested a permanent injunction, an award of statutory damages, dismissal of all remaining counterclaims, and other relief, including costs and fees. (Doc. Nos. 651 – 655.1.)

18.     The Court held a hearing on December 6, 2017, as scheduled. No appearance was made by or on behalf of the Defaulted Defendants.


**B.     The Defaulted Defendants' Conduct**

19.     Commencing in 2008, PRS/MCPS, a U.K. licensing society, repeatedly admonished the TriceraSoft Defendants that the PRS/MCPS licenses did not authorize distribution in the United States. The TriceraSoft Defendants, in turn, repeatedly acknowledged this fact to PRS/MCPS. The TriceraSoft Defendants, however, falsely attested to the contrary in this litigation

in an effort to justify their willful infringement and distribution within the United States. (Doc. No. 614, pp. 8-11; Doc. Nos. 615-2, 615-4, 615-6, 615-8, 615-11.)

20. Commencing in 2008, PRS/MCPS repeatedly admonished the TriceraSoft Defendants, and the TriceraSoft Defendants repeatedly acknowledged to PRS/MCPS, that royalties were only being reported and paid for "GB" (meaning, Great Britain) and not being paid on any sales in the United States. The TriceraSoft Defendants, however, falsely attested to the contrary in this litigation. (Doc. No. 614, pp. 11-14; Doc. Nos. 615-4, 615-5, 615-6, 615-18.)

21. Even though the TriceraSoft Defendants knew they had no licensing in the United States, they distributed tens of thousands of unauthorized recordings without even attempting to secure licensing until March 1, 2012. (Doc. No. 19, ¶4, ¶10(a); Doc. No. 19-1.)

22. When the TriceraSoft Defendants finally did approach Annie Schleicher (n.k.a. Annie Brinn), the Licensing Analyst at Sony/ATV ("SATV"), on March 1, 2012, the TriceraSoft Defendants portrayed themselves as requesting licenses for future releases, when they had already been infringing and distributing in the U.S. for at least four years. (*Id.*)

23. When Ms. Schleicher checked the internet to see if there was a TriceraSoft website, she saw SATV compositions already being exploited and told TriceraSoft that it would have to account for such unauthorized uses. The TriceraSoft Defendants made no response for six months. (*Id.*; *see also* Doc. Nos. 19, ¶ 10(b) and 19-2.) Thereafter, TriceraSoft's licensing agent stated specifically that TriceraSoft would provide information on all unauthorized uses, but TriceraSoft never did so. (Doc. No. 19, p. 12, ¶ (j), Doc. No. 19-11.)

24. After being confronted by Ms. Schleicher in March 2012, the TriceraSoft Defendants quickly procured inapplicable licenses from The Harry Fox Agency ("Harry Fox" or "HFA") for phonorecords, even though the TriceraSoft Defendants knew that Harry Fox did not

issue licenses for karaoke uses. In fact, the Harry Fox licenses specifically excluded all "karaoke" and lyric uses. The most reasonable construction of this conduct is that it was a tactic of the TriceraSoft Defendants calculated to create confusion, and they later argued that the Harry Fox licenses encompassed karaoke. Both this Court and the Sixth Circuit rejected that argument based upon the licenses' unambiguous language excluding all "karaoke" rights. (Doc. No. 430, pp. 5-6.) Indeed, the Sixth Circuit rejected all of the Tricerasoft Defendants' arguments concerning the Harry Fox licenses. (Doc. No. 430, pp.6-7.)

25.     In December 2014, the Tricerasoft Defendants opposed a motion for expedited discovery when Plaintiffs sought production of TriceraSoft's Harry Fox licenses. (Doc. 83-1, p.4.)  The Tricerasoft Defendants argued that Harry Fox licensing was irrelevant because it did not apply to karaoke uses and instead concerned only the mechanical licensing of sound recordings. (Doc. 85 at 5-6.)  In January 2015, Harry Fox sent a letter warning Tricerasoft that its license did not authorize karaoke. (Doc. 213.)  The Tricerasoft Defendants responded to HFA and again claimed that Tricerasoft was not relying on Harry Fox licensing to distribute karaoke. (Doc. 214.)  However, when the Court ordered the Tricerasoft Defendants to identify the licenses that authorized TriceraSoft's karaoke business, the Tricerasoft Defendants asserted the very same Harry Fox mechanical licenses that they had previously acknowledged to Harry Fox did not apply to karaoke and about which they had refused to provide discovery. (Doc. 196, p. 5.)  They then filed counterclaims purportedly based upon the Harry Fox licensing (Doc. 390 ¶ 58) and continued to pursue such arguments even after the United States Court of Appeals for the Sixth Circuit rejected their arguments as a matter of law. (Doc. No. 430, pp. 5-7.)

26.     Though repeatedly admonished by Ms. Schleicher that (a) no SATV licenses existed, (b) no songs had been approved, and (c) no royalty payments should be made, the

TriceraSoft Defendants still sent several unaccounted wire transfers directly to the SATV bank account (which were returned to the TriceraSoft Defendants), ostensibly to create an "implied" license. (Doc. No. 18, p. 11; Doc. No. 19, p. 10, pp. 15-17, ¶ 14(i)-(vi); Doc. Nos. 19-1 through 19-11.)

27.     After this litigation commenced and Plaintiffs initially sought a Temporary Restraining Order/Preliminary Injunction, the TriceraSoft Defendants represented to the Court that the request for injunctive relief was moot because they had ceased all sales in the U.S. when, in fact, the Tricerasoft Defendants had only blocked sales in Tennessee, Wyoming, and California, the states where Plaintiffs, their lawyers and the Court are located. (Doc. No. 310, pp. 4-9; Doc. No. 311, p. 2, ¶ 8; Doc. No. 311-6; Doc. Nos. 312 and 312-1 through 312-8; Doc Nos. 313 and 313-1 through 313-5.)

28.     The Court ultimately held the TriceraSoft Defendants in contempt (Doc. No. 610.) The TriceraSoft Defendants still have not purged the contempt by paying the monetary sanction or the award of attorneys' fees and costs. (Doc. No. 653, ¶ 10.)

29.     Additionally, the TriceraSoft Defendants: (a) never provided the documents required by the compliance provisions of the Preliminary Injunction (*e.g.*, a complete list of all karaoke recordings of Plaintiffs' compositions exploited by the Defendants); (b) failed to produce financial documents ordered by the Court; (c) failed to produce sales logs; and, (d) failed to appear for Court-ordered depositions. (Doc. No 639.)

30.     The TriceraSoft Defendants were given multiple opportunities to remedy their deficiencies in attending to this case, all of which were wasted.  The Court finds this conduct by the TriceraSoft Defendants, including their failure to comply with the injunction and other Court orders, to be willful and deliberate.

31. As for the U.K. suppliers that comprise the remaining Defaulted Defendants (the "U.K. Defaulted Defendants"), those suppliers infringed by exceeding the clear and unambiguous territorial limitations of their PRS/MCPS licensing by distributing in the U.S. and Canada and by providing karaoke recordings, purportedly made under the auspices of PRS/MCPS licensing, for download distribution on a service that they did not own and that was not authorized in their licenses. (Doc. No. 382, pp. 13-18, ¶¶ 46-62; *Id.* at p. 24, ¶ 76; Doc. No. 156.)

32. Plaintiffs made an attempt to resolve the infringement issues with the U.K. Defaulted Defendants prior to adding those Defendants in this case. (Doc. No. 369 (Under Seal), pp. 7-8; Doc. No. 370 (Under Seal), p. 3, ¶ 9; Doc. No. 653, ¶ 11.) The U.K. Defaulted Defendants refused to address the infringement claims; either directly but informally with Plaintiffs prior to being named as Defendants in this lawsuit, and continually by failing to take any action to defend against Plaintiffs' claims in this litigation once brought in.

33. On July 28, 2016, Plaintiffs filed a motion for entry of default against Defendants SBI Global Limited, Digitop LTD, Gary Ian Oates, Music Factory Entertainment Group, and Peter Parkin, with accompanying affidavit of service. (Doc. No. 450). Default was entered against those Defendants on August 15, 2016. (Doc. No. 466).

34. On September 7, 2016, Plaintiffs filed a motion for entry of default against Defendants Zoom Entertainments Limited, Joe David Blackie, and James Gerald Woodford, with accompanying affidavit of service. (Doc. No. 490). Default was entered against those Defendants on October 3, 2016. (Doc. No. 508).

35. Notwithstanding the entry of the Preliminary Injunction and the admitted lack of licensing to distribute in the United States, the U.K. Defaulted Defendants persist in shipping

unlicensed discs into and throughout the U.S. either directly from the U.K. or via U.S. based internet distributors.  (Doc. Nos. 654 and 655 and Exhibits attached thereto.)

C.    **The Infringed Works**

36.    The infringed works are those unlicensed recordings identified on the respective Exhibits to the Verified Second Amended Complaint. (Doc. No. 382-1 through 382-18).  Plaintiffs abandoned their claims for statutory damages awards for three separate infringements of two different compositions based upon reversions of the copyrights: the composition "*Not Giving Up On Love*" is the subject of separate karaoke recordings produced by two different Defendants (Sunfly and SBI) and listed on Exhibits 10 and 11; also, the composition entitled "*Disculpeme Senora*" was produced on one of the Tropical Zone recordings appearing on Exhibit 7.  As a consequence, there are three fewer claimed separate statutory damages awards than are listed on the 18 Exhibits to the Verified Second Amended Complaint.

37.    The specific works infringed by each Defaulted Defendant are identified in the proposed final judgment attached hereto, which infringements are adopted by reference as if set out fully herein.

## II.    Recommended Conclusions of Law

**A.    The Defaulted Defendants have admitted all factual allegations in the Second Amended Complaint.**

By defaulting, the Defaulted Defendants admit all of the factual allegations in the Second Amended Complaint, and liability is conclusively admitted. *Hewlett-Packard Co. v. Capital City Micro, Inc.*, No. 3:04-0779, 2006 U.S. Dist. LEXIS 61254, at *5 (M.D. Tenn. Aug. 28, 2006).

A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws

upon which a claim is based and caused injuries as alleged." *Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 451 (E.D.N.Y. 2011) (quoting *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)).

**B.     The Court may award damages and non-monetary relief without further proceedings.**

Pursuant to Rule 55(b)(2), after entry of default, the Court may conduct a hearing to determine the amount of damages to award.  In lieu of an in-person hearing, the Court may decide the matter upon a motion based upon the written record. *Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 61254, at *5-6.  An inquest on paper, in lieu of a hearing, is particularly appropriate when the issue is the amount of statutory damages. *Rolex Watch USA, Inc. v. Brown*, No. 01 Civ. 9155 JGK AJP, 2002 U.S. Dist. LEXIS 10054, at *4-5 (S.D.N.Y. June 5, 2002).

**C.     Enhanced statutory damages are appropriate.**

Plaintiffs filed a Notice of Election to Seek Statutory Damages. (Doc. No. 538.)  Plaintiffs also put the Defaulted Defendants on notice of their intent to seek maximum statutory damages by requesting that relief in the pending motion for sanctions, default damages and a permanent injunction. (Doc. No. 651.) Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs seek statutory damages for all "infringements involved in this action, with respect to any one or more of the Subject Works for which any one infringer is individually liable, or for which any two or more infringers are liable jointly and severally."  The propriety of statutory damages is predicated on "Congress' prerogative to pass laws to protect copyrights and to prescribe a range of punishment Congress believes is appropriate to accomplish the statutory goal."  *TVT Records v. Island Def Jam Music Group*, 279 F. Supp. 2d 413, 416 n.3 (S.D.N.Y. 2003).

Statutory damages for copyright infringement fall between $750 and $30,000 per award for non-willful infringement. However, when infringement is "willful," the statutory-damages

ceiling rises to a maximum of $150,000 per infringement. 17 U.S.C. § 504(c)(1). "Willfulness" includes reckless behavior or willful blindness. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011). This court has specifically held that one who "recklessly disregards" a copyright holder's rights, even if lacking actual knowledge of infringement, may be subject to enhanced damages. *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006). To refute evidence of willful infringement, a defendant must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1335, 1336 (9th Cir. 1990).

A defendant's refusal or failure to provide financial documents in discovery prohibits the plaintiff from obtaining evidence that could enable a calculation of actual damages. *Chanel, Inc. v. Gordashevsky*, No. 05-5270 RBK, 2007 U.S. Dist. LEXIS 6576, at *17 n.6, *21 (D.N.J. Jan. 29, 2007); *Chanel, Inc. v. French*, No. 05-61838-CIV, 2006 U.S. Dist. LEXIS 93297, at *5 (S.D. Fla. Dec. 27, 2006) ("Statutory damages are apropos when an infringer's nondisclosure of pertinent facts—such as with default—leaves damages uncertain."). In that circumstance, an award of statutory damages is particularly appropriate.

If within the prescribed limits, review of the trial court's award of statutory damages is "extraordinarily deferential—even more so than in cases applying abuse-of-discretion review." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007) (citing *Douglas v. Cunningham*, 294 U.S. 207, 208-09 (1935) as establishing the rule that Congress's purpose in enacting the statutory-damage provision of the Copyright Act and its delineation of specified limits for statutory damages "takes the matter out of the ordinary rule with respect to abuse of discretion."). While statutory damages are not intended to provide a plaintiff with a windfall recovery, such damages can take on a "partially punitive character" to serve a deterrent

purpose. *National Football League v. Primetime 24 Joint Venture*, 131 F.Supp.2d 458, 478, n.17 (S.D.N.Y. 2001).

Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement. *Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998). Even for non-injurious and unprofitable invasions of copyright, the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy of discouraging wrongful conduct. *Arclight and Films Pvt, Ltd. v. Video Palace Inc.*, 303 F.Supp.2d 356, n.37 (S.D. N.Y. 2003. High dollar statutory damages within applicable limits have been upheld. *See, e.g.*, *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), *cert denied* 534 U.S. 1127 (2002) (upholding $31.68 million award because "it is equal to a per work infringed award that is well within the statutory range for willful infringement . . . [and] there was substantial evidence to support a finding of willfulness"); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) (affirming an award of $68,750 per work because it was "within the statutory range" and "the jury's . . . finding of willfulness" was "sustainable").

Courts may consider several factors in awarding statutory damages, including "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *King Records*, 438 F.Supp.2d at 852. In awarding statutory damages, courts may also consider "the goal of discouraging wrongful conduct." *Id.* The option of electing statutory damages is especially appropriate where "the information needed to establish an exact measure of actual damages is within the infringers' control and often is not fully disclosed." *Id.* at 853 (quoting *Disney Enters., Inc.*, 427 F. Supp. 2d 807, 2006 WL 962577, at *6 (citations omitted).) Additionally, the scope of the defendant's conduct is relevant to selecting

appropriate amounts of statutory damages. *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F. 2d 1, 3 (1st Cir. 1983) ("size of defendants' operation" relevant); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 US 228, 233 (1952) (statutory maximum appropriate for "far flung distributing enterprise"); *Lowry's Reports, Inc. v. Legg Mason, Inc., et al.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004); *see also, e.g.*, *UMG Recordings, Inc. v. MP3.com, Inc.*, 56 USPQ 2d 1376, 1380 (S.D.N.Y. 2000) ("defendant's size and financial assets … highly relevant" to $118 million award).

In a default case, such as here, the court may infer that the defaulting defendant willfully infringed the plaintiff's copyrights. *Microsoft Corp. v. Wen*, No. C 99-04561, 2001 U.S. Dist. LEXIS 18777, at *14-17 (N.D. Cal. Nov. 13, 2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint); *Sony Music Entertainment v. Cassette Production*, No. 92 Civ. 92-4494, 1996 U.S. Dist. LEXIS 21549, at *6, 13 (D.N.J. Aug. 23, 1996) (defendant admitted plaintiff's claim that infringements were willful by virtue of his default); *see also Fallaci v. The New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (inference of willfulness drawn by "defendant's failure to appear and defend this action," particularly in light of plaintiff's allegation of willfulness); *Original Appalachian Artworks, Inc. v. Yuil Int'l Corp.*, U.S.P.Q. 2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action such as this"). By virtue of the defaults, the factual allegations in the Verified Second Amended Complaint are conclusively admitted, and establish that the Defaulted Defendants directly and willfully infringed Plaintiffs' copyrights by reproducing and distributing unauthorized karaoke recordings. (Doc. No. 382, p. 24-25, ¶¶ 78-80.) An additional consequence of the defaults is that the Defaulted Defendants

have not demonstrated any defense to the infringement, that is, they have failed to show a reasonable good faith belief in the innocence of their conduct.

The admitted allegations also establish that the Defaulted Defendants willfully committed contributory copyright infringement by supplying illegal recordings to each other for further copying and distribution as digital downloads, unauthorized streams and custom discs, either by possessing no licensing at all or by exceeding the scope of certain limited licenses. (Doc. No. 382, p. 25, ¶ 79.) As demonstrated by the order holding the TriceraSoft Defendants in contempt, they continued to reproduce and distribute unauthorized karaoke recordings in violation of the preliminary injunction imposed by the Court. The unrefuted declarations submitted in connection with Plaintiffs' request for statutory damages and other relief, also establish that certain of the Defaulted Defendants continued to sell the illegal recordings after the commencement of this litigation. (Doc. Nos. 654 and 655.)

Maximum statutory damages have been awarded in analogous cases. *See, e.g.*, *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (affirming award of maximum statutory damages and attorneys' fees "in line with the statutory goal of deterrence" because defendant's continuing infringement "following the Texas court's injunction was the 'antithesis of innocence' and fully justified the district court's award"); *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 37611, at *11-12 (W.D. Wash. Mar. 20, 2014) (awarding maximum statutory damages against defaulted willful infringer because such an award "alerts copyright infringers they may not sneer in the face of . . . copyright laws without facing consequences") (internal quotations and citations omitted); *U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc.*, 2005 U.S. Dist. LEXIS 9853, at *25-26 (S.D.N.Y. May 25, 2005) (awarding maximum statutory damages for each of forty-seven willfully infringed works

where defendants continued to infringe after an injunction and "refused to participate in discovery in any meaningful way, . . . ma[king] it impossible to ascertain the true extent of their infringing activities") *affirmed with respect to maximum statutory damages award and reversed in irrelevant part*, 245 F.App'x 28, 29 (2d Cir. 2007); *Warner Bros. Entm't, Inc. v. Caridi*, 346 F.Supp.2d 1068, 1074 (C.D. Cal. 2004) (awarding maximum statutory damages per work against defaulted willful infringer who "fail[ed] to proffer any defense or participate in discovery or engage in settlement negotiations"). This Court has also awarded damages within the willful range in cases concerning far less egregious conduct. *See Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F. 3d 574 (6th Cir. 2007) (upholding Middle District of Tennessee award of $31,000 per work for willful infringement); *Warner/Chappell Music, Inc. v. Bertrand Music Ent., Inc.*, Case No. 3:12-0512 (M.D. Tenn. 2014) (awarding $50,000 per infringement to reflect "the willful and egregious nature of the infringement" and the large scope of the infringement).

Because the infringing conduct of the Defaulted Defendants in this case has been exponentially larger in scope and more aggravated than in either the *Zomba* or *Bertrand* cases, an award at the upper end of statutory damages is appropriate. An enhancement is particularly appropriate because the conduct of the Defaulted Defendants involves repeated actions rather than an isolated incident, and years of deliberate infringement, followed by their evident lack of concern for the seriousness of the claims made in this litigation. Defaulted Defendants had multiple opportunities to respond to Plaintiffs' claims and offer any defenses, including when notified of Plaintiffs' request for maximum statutory damages.

But throughout, the U.K. Defaulted Defendants elected not to participate. For these reasons, an award of statutory damages against all Defaulted Defendants other than the Tricerasoft Defendants in the amount of $75,000.00 per infringement is warranted.

As to the TriceraSoft Defendants, additional aggravating factors justify an award of maximum statutory damages. The TriceraSoft Defendants did not simply fail to appear. Rather, as detailed herein, the TriceraSoft Defendants appeared and defended vigorously for years without ever producing essential documents the Court ordered them to produce, only to then disappear after losing on virtually every contested issue. Based upon years of willful infringement, repeatedly disregarding the Court's orders, refusing to provide financial documents or to account for all unauthorized uses, willfully violating the Preliminary Injunction order and failing to pay the sanctions for contempt, no reason exists to be lenient in imposing a statutory damages award against the TriceraSoft Defendants. For these reasons, the statutory maximum damages of $150,000.00 per infringement are appropriately imposed against the TriceraSoft Defendants.

Anything less than the awarded amounts would send a message to other would-be infringers that an economy of scale benefits the infringer and disregard for the authority of courts will be treated as a mere nuisance. Such messages would likely encourage, not deter, infringers and undermine the policies underling the remedies provided for in the Copyright Act.

**D.** **The Sony/ATV Plaintiffs are entitled to 3859 separate awards of statutory damages, and the EMI Plaintiffs are entitled to 4258 separate awards of statutory damages.[4]**

Section 504(c)(1) of the Copyright Act provides that statutory damages may be awarded "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally . . . ." However, "where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir. 1997) (citing H.R. Rep. No. 94–1476, 94th Cong., 2d Sess., at 162, *reprinted in* 1976 U.S. Code Cong. and Admin. News 5778), *rev'd on other grounds* 523 U.S. 340 (1998) ("*Krypton Broadcasting I*"); *see Columbia Pictures Indus. v. Krypton Broadcasting of Birmingham, Inc., et. al.*, 259 F.3d 1186 (9th Cir. 2001)("*Krypton Broadcasting II*"); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189-1192 (9th Cir. 2016); *Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 144 (5th Cir. 1992).

In *Krypton Broadcasting I*, 106 F.3d at 294, three television stations aired the same infringing broadcast of "Who's the Boss?" The television stations were not joint tortfeasors with each other, so each broadcast of the same work was a separate act of infringement of the work. *Id.*

---

[4] As noted above, Plaintiffs abandoned their claims for statutory damages awards for three separate infringements of two different compositions based upon reversions of the copyrights: the composition "*Not Giving Up On Love*" is the subject of separate karaoke recordings produced by two different Defendants (Sunfly and SBI) and listed on Exhibits 10 and 11; also, the composition entitled "*Disculpeme Senora*" was produced on one of the Tropical Zone recordings appearing on Exhibit 7. As a consequence, there are three fewer claimed separate statutory damages awards than are listed on the 18 Exhibits to the Verified Second Amended Complaint.

Defendant Feltner owned all three television stations. As the owner, Feltner was a joint tortfeasor with all three stations, so he was liable for three separate infringements of the same work. *Id.* The Supreme Court, while reversing the Ninth Circuit on the issue of the defendants' right to a jury trial, nevertheless left undisturbed the calculation of the number of statutory damages awards. *Feltner v. Columbia Pictures TV*, 523 U.S. 340 (1998).[5]

Here, the Karaoke Labels[6] are not joint tortfeasors with each other because they are separate companies that make their own recordings, but the TriceraSoft Defendants are joint tortfeasors with each Karaoke Label. Thus, because the TriceraSoft Defendants are jointly and severally liable with each of the labels (and the labels' associated individual Defaulted Defendants), but the labels are not jointly and severally liable with each other, Plaintiffs are entitled to separate awards associated with each label. *Krypton Broadcasting I*, 106 F.3d at 294 n.7.

For all of these reasons, entry of a final judgment is appropriate. A recommended final judgment is attached as Exhibit 1, and specifically identifies the number of separate awards regarding each Defendant, individually, and each group of Defendants who are jointly and

---

[5] *See also*, *Krypton Broadcasting II*, 259 F.3d 1186 at 1194, wherein the Ninth Circuit, upon the second appeal, following the jury trial upon remand from the Supreme Court, affirmed the District Court's holding that the number of statutory damages awards was the "law of the case." The Ninth Circuit agreed with the District Court's reasoning that based upon the Supreme Court's refusal to certify the Ninth Circuit's earlier affirmance with regard to the number of statutory damages awards. As the District Court has reasoned: "The Ninth Circuit went on to affirm this Court's determination that each episode in a television series constitutes a separate work . . . . This holding was not certified by the Supreme Court, and was not affected by the Supreme Court's opinion, and thus remains the law of the case." *Id.*

[6] Priddis, Music, Inc., Richard L. Priddis, SunFly Music Group. John West, Collin Simmons, Caryn Minoun, individually and d/b/a "Music Maestro" and "Disc on Demand," SBI Global Ltd., James Gerald Woodford, Digitop Ltd., Gary Ian Oates, Music Factory Entertainment Group, Peter Parkin, Zoom Entertainments Ltd. and Joe David Blackie comprise the "Karaoke Labels."

severally liable with the TriceraSoft Defendants, but not jointly and severally liable with other groups of Defendants associated with other infringing labels.

### E.  The Preliminary Injunction should be made permanent.

A permanent injunction prohibiting further use of the works at issue is warranted. Section 502 of Copyright Act, Title 17, allows the Court to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Given the entire record in this case, no serious doubt exists that the Defaulted Defendants will resume or continue their infringement unabated if not enjoined.

On September 25, 2015, the Court entered the Preliminary Injunction. In addition to enjoining the TriceraSoft Defendants' continued sales of karaoke recordings utilizing Plaintiffs' copyrighted works, the Preliminary Injunction required numerous compliance measures. The TriceraSoft Defendants failed to comply with the mandates of the Preliminary Injunction in virtually every material way. But the most compelling evidence of the TriceraSoft Defendants' likelihood of resuming their infringement of Plaintiffs' copyrighted works is that, as the Court found, the TriceraSoft Defendants previously told the Court that they had stopped all sales of all of the works at issue throughout the United States, when, in fact, they had only strategically blocked sales in Tennessee, California, and Wyoming. (Doc. No. 254, pp. 4-5.)

By virtue of the admitted allegations of willful infringement, and the Court's prior findings and conclusions in granting preliminary injunctive relief, entry of a permanent injunction is appropriate, prohibiting the Defaulted Defendants from making, selling, advertising, or distributing sound recordings, audio-visual works, derivative works, or any karaoke products, and from otherwise exploiting any compositions in which Plaintiffs own and/or control an interest including, but not limited to, the Subject Works identified on Schedule "A" to the Proposed Final

Judgment attached as Exhibit 1. The Court further recommends that the requirement of a bond be vacated.

### F.  An award of costs, including fees, is appropriate.

Section 505 of Title 17 authorizes an award of fees and costs to the prevailing party. Nonexclusive factors that inform a court's fee-shifting decision in a copyright case include frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S. __, 136 S.Ct. 1979, 1985 (2016). "Section 505 grants courts wide latitude to award attorney's fees based on the totality of the circumstances in a case." *Id.* As detailed in the Declarations of Paul Stacey (Doc. No. 652) and Tim Warnock (Doc. No. 653), the amount of the fees and costs incurred pursuing the claims against the Defaulted Defendants, exclusive of any fees and costs already awarded as part of the contempt finding, totals $1,188,854.88 ($1,108,263.50 in fees and $80,591.38 in costs). (Doc. No. 652 ¶ 6; Doc. No. 653 ¶ 2.) Upon consideration of the totality of the history and circumstances of this case, as described above, the Court finds the amount of fees to be reasonable, and the fees are therefore appropriately awarded as requested.

### G.  The TriceraSoft Defendants' remaining counterclaims should be dismissed

Plaintiffs previously filed a Motion seeking a dismissal of four of the six Counterclaims brought by the TriceraSoft Defendants. (Doc. No. 320.) The Court granted Plaintiffs' Motion. (Doc. No. 464.) However, two counterclaims (the "Second Cause of Action" and the "Fifth Cause of Action") for "tortious interference" and a declaratory judgment, remain pending.

In December of 2016 and January of 2017, the TriceraSoft Defendants failed to comply with the Court's order to produce documents or to appear for depositions, which prompted Plaintiffs to file their Rule 37 Motion for Sanction of Default and to Set Hearing for Entry of

Default Judgments. (Doc. No. 620.) Plaintiffs sought, in part, "an Order striking the TriceraSoft Defendants' pleadings . . . ." (Doc. No. 620, p. 1; Doc. No. 621, pp. 2-3.) As a practical matter, by entry of default as to liability, the TriceraSoft Defendants have admitted willful copyright infringement. The Tricerasoft Defendants' remaining counterclaims for a declaration of non-infringement and for tortious interference (which is also based upon Plaintiffs' enforcement of their copyrights) are inconsistent with their liability for willful copyright infringement.

Further, Federal Rule of Civil Procedure 37(b)(2)(A)(iii) allows the Court to strike pleadings, and Federal Rule of Civil Procedure 37(b)(2)(A)(v) allows the Court to dismiss claims based upon a party's refusal to comply with a Court order, such as the orders to produce documents and appear for depositions. Based on the conduct of the TriceraSoft Defendants as recited herein, their two remaining counterclaims are appropriately stricken, and therefore must be dismissed.

Further, the TriceraSoft Defendants have clearly failed to prosecute their counterclaims, warranting dismissal under Federal Rule of Civil Procedure 41(b), as requested by Plaintiffs. For all of those reasons, the TriceraSoft Defendants' remaining counterclaims should be dismissed.

**H.      Plaintiffs' Motion for Sanctions (Docket Entry No. 513)**

In their separate (and earlier) motion for sanctions (Doc. No. 513), Plaintiffs argue that the Tricerasoft Defendants have repeatedly filed pleadings in this case which violate Rule 11, to the extent that they have asserted legal contentions that are not warranted by existing law or by a non-frivolous argument for the extension modification or reversal of existing law or the establishment of new law. Plaintiffs further assert that the TriceraSoft Defendants have filed declarations falsely attesting to the authenticity and character of numerous documents when, in fact, the documents themselves are fabrications or the terms and provisions of the documents were conspicuously falsified. Plaintiffs set out a list of 13 specific examples of what they believe are sanctionable

filings.  *See* Doc. No. 513 at 2-3.  Plaintiffs additionally argue that Ramona DeSalvo, prior counsel for the TriceraSoft Defendants, should be found to have personally violated 28 U.S.C. § 1927 because of the manner in which she litigated this case.  Plaintiffs argue that counsel unreasonably and vexatiously multiplied the proceedings in this case, creating both a great expense to Plaintiffs and an unnecessary burden to the Court by making numerous filings that endlessly repeated and rehashed arguments that were frivolous and unfounded in law or fact.  *Id*. at 4-6.

Rule 11 provides that "sanctions may be imposed if a reasonable inquiry discloses [that a] pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citation omitted). "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus...streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 390 (1990).  The Rule "stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed." *Merritt*, 613 F.3d at 626 (citation omitted).  Rule 11 motions are measured against an "objective standard of reasonableness under the circumstances." *Id*.  Courts must not "use the wisdom of hindsight," but must instead test what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id*.  In order for conduct to be considered so "unreasonable" as to warrant sanctions, that conduct must be "relatively egregious." *Fulmer v. MPW Indus. Servs., Inc.*, 2006 WL 1722433 at *5 (M.D. Tenn. June 21, 2006) (Trauger, J.).

The so-called vexatious litigation provision of Title 28, provides as follows:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Sanctions under §1927 may be awarded when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios Div. of Source Advantage, Ltd.*, 465 F.3d 642, 646 (6th Cir.2006) (quoting *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir.1987)). The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy. *Red Carpet*, 465 F.3d at 646 (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230–31 (6th Cir.1986)). A sanctioned attorney is required to personally satisfy the excess costs attributable to the misconduct. *Red Carpet*, 465 F.3d at 646.

Awarding sanctions under either Rule 11 or 28 U.S.C. § 1927 is within the sound discretion of the trial court, and the court is accorded considerable deference in ruling on a motion for sanctions. *Indah v. U.S. S.E.C.*, 661 F.3d 914, 928 (6th Cir. 2011); *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). The undersigned is thoroughly familiar with the proceedings in this case, having acted as the case manager as of August of 2015, and having conducted both in-court hearings and telephone conferences, as well as review and disposition of motions and filings in the case. After examination of the relevant filings, as well as the entire record in this case, the undersigned concludes that the Court should exercise its discretion and deny the motion for sanctions.

Of particular note is the outcome that the proceedings in the case subsequent to the filing of the motion for sanctions have largely, if not entirely, rendered the issue moot as to the TriceraSoft Defendants. A default was entered against the TriceraSoft Defendants as a sanction for their failure to comply with discovery and with court orders. *See* Order entered October 2,

2017 (Doc. No. 644); Entry of Default on October 6, 2017 (Doc. No. 646). As discussed above, default judgment is recommended in favor of Plaintiffs, awarding them a permanent injunction, substantial statutory damages, the striking of all remaining counterclaims against them, and an award of costs and attorney's fees exceeding $1 million. The requested relief of striking pleadings as a sanction is therefore moot, and any attorney's fees incurred by Plaintiffs related to the alleged sanctionable conduct is already a part of the final award of costs and attorney's fees to Plaintiffs as the prevailing parties. There is no real purpose to be served by an additional analysis of the motion for sanctions as against the TriceraSoft Defendants at this point in the proceedings.

This leaves the thorny issue of the motion for sanctions against Ms. DeSalvo personally. To be certain, this litigation has been contentious and intensely contested, as well as drawn out and lengthy. Unfortunately, this is often the script for music industry copyright infringement cases that come before this Court. In the end, the TriceraSoft Defendants are the ultimate losers in this lawsuit, having advanced defenses and claims that failed to hold water when tested against the Plaintiffs' facts and legal arguments and having, in a practical sense, likely gone out of business. In hindsight, the TriceraSoft Defendants' certainly employed poor litigation strategy. However, an attorney whose clients advance losing arguments and take questionable legal and factual positions does not engage in sanctionable conduct by this mere fact alone. The necessary showing under Rule 11 is a level of egregiousness on the part of counsel or a showing of conduct that is tantamount to bad faith. After review of all of the filings on the matter, the Court cannot find that such factors exist with respect to the conduct of Ms. DeSalvo. A thin line often exists separating what is zealous and vigorous advocacy from what is unreasonable, baseless, and harassing litigation. The Court is unpersuaded that the conduct of Ms. DeSalvo in this case crosses that line or rises to the level of sanctionable conduct under Rule 11. The arguments and explanations made

by Ms. DeSalvo in her response to the motion for sanctions are sufficient to satisfy the Court's inquiry as to the reasonableness of her conduct as counsel for the TriceraSoft Defendants.

While a showing of subjective bad faith is not necessary with respect to § 1927 sanctions, there must still be more than negligence or incompetence on the part of the attorney against whom sanctions are sought. *Red Carpet*, 465 F.3d at 646. An attorney may be sanctioned for intentionally abusing the judicial process or knowingly disregarding the risk that her actions will needlessly multiply proceedings. *Id*. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1987) (quoting *In re Ruben*, 825 F.2d at 984).

The application of this standard to Ms. DeSalvo's conduct in this case is unquestionably a closer call, but, ultimately, the Court finds an insufficient basis to impose sanctions against Ms. DeSalvo that would render her personally liable to Plaintiffs for their attorney's fees. To be sure, the record reflects that the TriceraSoft Defendants advanced flawed arguments during the litigation and repeated those arguments even though the Court made clear that they were not well taken. Further, as already noted, this was fiercely contested litigation. However, in the Court's view, and as suggested by Ms. DeSalvo in her motion to withdraw and reiterated during the October 4, 2016, case management conference (*see* Doc. No. 512 at 24), she took on a case that became too much for her to effectively handle. It is also the Court's view that Ms. DeSalvo was likely misled at times by her client and, as a result, made some questionable filings and planted a proverbial flag on a hill that was easily overtaken.

Finally, in the Court's opinion, Ms. DeSalvo allowed herself to become too personally impacted by the heated nature of this litigation instead of acting as a more detached and objective advocate. In hindsight, there are likely many different steps Ms. DeSalvo wished she had taken in this litigation, but the explanations Ms. DeSalvo makes in her response to the motion for sanctions are sufficient to satisfy the Court that DeSalvo did not act with intent to abuse the judicial process or even in a manner that vexatiously multiplied the course of this litigation. Personal sanctions against her under § 1927 are therefore unwarranted.

### III.    Recommendation

For the reasons set forth above and based on the entire record, the undersigned Magistrate Judge respectfully recommends that:

(1)    the TriceraSoft Defendants' remaining counterclaims be dismissed;

(2)    final judgment be entered against the Defaulted Defendants for statutory damages, in amounts set forth in the proposed attached Final Judgment ("Exhibit 1"), as well as costs and attorneys' fees in the amounts $1,188,854.88 ($1,108,263.50 in fees and $80,591.38 in costs, exclusive of any fees and costs already awarded as part of the contempt finding);

(3)    the Court's Preliminary Injunction be made permanent, as to the works described in accompanying Schedule "A", Parts 1 through 5, to the proposed Final Judgment[7]; and,

(4)    Plaintiffs' motion for sanctions against Ramona DeSalvo personally be denied.

---

[7] The Clerk of Court is permitted to send the proposed Final Judgment ("Exhibit 1") and Schedule "A", Parts 1 through 5, to the Defaulted Defendants by the most cost-effective means available to the Clerk, including reduced page copies (i.e. 2 or more pages per each page and double sided) or on a CD or other data storage.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within **fourteen (14) days** of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to objections must be filed within **fourteen (14) days** of service of the objections. See Fed. R. Civ. P. 72(b) and L.R. 72.03(b). See Fed.R.Civ.P. 72(b) and Local Rule 72.01(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge